JOHN C. YEATMAN, Plaintiff and Respondent, *v.* JAMES KING, JR., SARAH KING, FOSTER COUNTY, STATE OF NORTH DAKOTA, JAMES MURPHY, County Treasurer of Foster County, and WALTER M. MOORE, County Auditor of said County, Defendants; FOSTER COUNTY, JAMES MURPHY ET AL., Defendants and Appellants.

**Foreclosure of Mortgage—Constitutional Law—Obligation of Contracts—Changing Priority of Liens—Taxation.**

1. Chapter 43 of the Laws of 1889, and chapter 152 of the Laws of 1890, in so far as they attempt to make the lien for seed grain furnished thereunder, superior to the lien of a mortgage executed before these statutes were enacted, are repugnant to the provisions of the federal constitution forbidding the impairment by any state of the obligations of a contract.

2. The obligation of the person supplied with seed grain under these statutes to pay the county therefor is not a tax, and cannot be made a tax by the legislature. It is a mere debt.

(Opinion Filed Feb. 23, 1892.)

*A* *PPEAL* from district court, Foster county; Hon. ROD-
ERICK ROSE, Judge.

*Ben Borton* and *Fredrus Baldwin,* for appellants.    *John S*
*Watson,* for respondent.

Action by John C. Yeatman against James King, the county
of Foster, James Murphy, county treasurer, and Walter M.
Moore, county auditor, to foreclose a real estate mortgage.
Judgment for plaintiff. The defendant county and its treasurer
and auditor appeal. Affirmed.

Ben Borton and Fredrus Baldwin, for appellants:

Under the power of the legislature to allow mechanic's liens,
it has been held that under the statute making such liens prior
or superior to mortgages, that the law was constitutional.
Brooks v. Railroad Co., 101 U. S. 443; Meyer v. Hornby, 101 N.
Y. 728.    See, also, Bertholf v. O'Reilley, 74 N. Y. 509.

John S. Watson, for respondent:

The lien upon real estate for taxes has no existence unless
there be some statute creating it, and such statute must be
strictly construed. Desty on Taxation, p. 734; State v. Newark,
42 N. J. Law 38; Carter v. Rodewald, 108 Ill. 351.    Taxes
are burdens or charges imposed by the legislative power of a
state upon persons or property to raise money for public pur-
poses.    Blackwell, Tax Titles, 1;  Perry v. Washburn, 20 Cal.
318; Loan Association v. Topeka, 20 Wall. 655.    To subject the
lien of a prior mortgage of land to the claim of the county
for the value of seed wheat furnished is, in effect, a tax upon the
mortgagee, and as such violates every principle upon which rests
the taxing power.    People v. Salem, 20 Mich. 474;  Weeks v.
Milwaukee, 10 Wis. 258;  Ryerson v. Utley, 16 Mich. 269;  Mer-
rick v. Amherst, 12 Allen 504.    On the theory that the seed lien
is a tax the particular tracts are subject to a two-fold levy for
the purpose of raising a single fund, which is against the policy
of the law.    Cook v. Burligton, 13 N. W. Rep. 113;  Talman v.
Butler County, 12 Iowa 534;  Rice County v. Bank, 23 Minn.
280.    Apportionment of the burden is a necessary element in

all taxation, and any attempt at the exercise of this power without it is absolutely void. Motz v. Detroit, 18 Mich. 495; Woodbridge v. Detroit, 8 Mich. 274. The weightiest objection to the legislation is that it violates the federal constitution, by impairing the obligation of a contract. See Bronson v. Kinzie, 1 How. 311; Howard v. Bugbee, 24 How. 461; Coddington v. Bispham, 36 N. J. Eq. 574; Maloney v. Fortune, 14 Iowa 417; Munday v. Monroe, 1 Man. 68; Heywood v. Judd, 4 Minn. 483; Berthold v. Halman, 12 Minn. 335; Berthold v. Fox, 13 Minn. 501.

The opinion of the court was delivered by

CORLISS, C. J. The contest here is between plaintiff and defendant Foster county for priority of lien. The action is to foreclose a real estate mortgage. Foster county is made a party defendant on the theory that it holds a lien on the mortgaged real property subordinate to the lien of plaintiff's mortgage. This contention of the plaintiff is denied by Foster county, and the latter, having been defeated by the trial court, brings the question before us for review. It is purely an issue of law. The facts are undisputed. Plaintiff's mortgage is dated July 1, 1886, and was duly recorded July 5, 1886. On March 26, 1889, Foster county entered into a contract to furnish, and actually did furnish on that day, to the mortgagor and owner of the mortgaged premises, pursuant to such contract, 150 bushels of seed wheat, to be used by him to raise a crop upon the mortgaged premises in the season of 1889. The seed was actually used for that purpose. All proceedings were duly taken by the county in conformity with the statute to perfect a lien upon the land under the provisions of chapter 43 of the Laws of 1889. This act so far as it is material to this case, provides that, "if the said indebtedness (for the seed grain furnished) be not paid on November 1, 1889, the amount thereof shall be entered upon the tax list of such county for the year 1889 as a tax upon the land upon which such seed wheat was sown, to be collected as other taxes are; and the sum so entered and levied shall be a first lien upon the crop of grain raised each year by the person receiving said seed grain, and also upon the real estate owned

by such person, until the tax is fully paid." On April 14, 1890, Foster county furnished the mortgagor, King, seed wheat for the season of 1890, to be sown upon this same land. It was so sown. The county claims a lien upon the land for the value of this seed, under the provisions of chapter 152 of the Laws of 1890. No question is raised as to the existence of liens on the land for the seed wheat furnished in 1889 and 1890. The only inquiry is whether such liens are paramount to that of the mortgage, which was executed and became a lien upon the land more than two years before the first law was enacted. It is unnecessary to refer to the provisions of the act of 1890, as the law of 1889 confers upon the county greater rights than are conferred upon it by the act of 1890, the lien being in express terms declared to be a first lien under the statute of 1889, while the act of 1890 is silent on this subject of priority. Having reached the conclusion that the provision of the act of 1889, giving priority to the seed lien, cannot, in the face of the inhibition against the impairment by a state of the obligations of a contract, work the destruction or impairment of a prior subsisting lien, created before the act of 1889 was passed, it is, of course, unnecessary to determine whether the act of 1890 does or does not attempt to make the seed lien paramount. The statute which makes the lien a first lien upon the land describes it as a tax lien, and the amount due for the seed grain is declared to be a tax, and the amount thereof, in case of default in its payment, is directed to be entered upon the tax list of the county. But the voice of the legislature cannot alter the essential nature of things. No legislative fiat can make that a tax which is not and cannot be a tax. If the law-making power were vested with unlimited authority to fix the meaning of words, to take cases without the prohibition of the constitution by arbitrary definitions, the fundamental rights of the citizen would be safe only so long as the legislature should abstain from defining away constitutional protections. Due process of law might be defined to embrace arbitrary confiscation; such a thing as an *ex post facto* statute might be defined practically out of existence; and many, if not all, of the barriers erected to shield the fundamental rights of the citizen from legislative

assault—barriers seemingly of adamant, and apparently stand-
ing upon abiding foundations—would crumble before the
breath of legislative definition. We are confident the agent
has no power to define away the limitations upon his delegated
authority. Said Mr. Justice MILLER in Davidson v. New Or-
leans, 96 U. S. 97: "But when, in the year of grace 1886, there
is placed in the constitution of the United States a declaration
that 'no state shall deprive any person of life, liberty, or prop-
erty without due process of law,' can a state make anything
due process of law which by its own legislation it choses
to declare such? To affirm this is to hold that the pro-
hibition of the state is of no avail, or has no application,
where the invasion of private rights is affected under the form
of state legislation." In the Munn Case, 94 U. S. 113, the lan-
guage of Mr. Justice FIELD is equally emphatic. Speaking of
the provision in the constitution of Illinois declaring certain
grain elevators public warehouses, he said: "There is no
magic in the language, though used by a constitutional conven-
tion, which can change a private business into a public one,
or alter the character of the building in which the business is
transacted." Chief Justice WAITE, in the same case, after
reaching the conclusion that the business of the warehouseman
at Chicago, under the peculiar circumstances, was affected with
a public interest—was a public business—said: "It may not
be made so by the operation of the constitution of Illinois or
this statute, but it is by the facts." It is needless to dwell
longer upon a principle so obvious.

Is, then, the obligation under the law resting upon the per-
son who has received temporary county aid in the shape of seed
grain, to repay to the county the value thereof, a tax in any
sense of the word whatever? We are very clear that it is not.
If the oracle be consulted we find it gives back no answer
that will justify the theory that this obligation is a tax. Says
Judge Cooley at the very threshold of his work on Taxation:
'Taxes are defined as being the enforced proportional contri-
bution of persons and property, levied by authority of the state
for the support of the government and for all public needs.'
The amount to be paid by him who has been supplied by the

public with seed grain is not in any sense a "contribution," but it is a debt owing by him to the county for value received by him in the form of property. If it could be regarded as a contribution, it is not a proportionate contribution, for he who owes the duty to make this payment owes it in addition to his duty to pay his proportion of taxes, and he may be the only person in the county upon whom this extra obligation rests. Neither can it be said to be an "enforced" contribution. Whatever he is bound to pay is owing because of his voluntary purchase of seed grain from the county. There is no coercion. He pays what he agrees to pay and no more. The money is not paid for the support of the government, nor for any public purpose. So far as the statute apportions the burden of furnishing this seed grain among all taxpayers, the sum so apportioned is a proper tax. This we have held under the peculiar phraseology of our constitution, and in view of the trend of legislation in the northwestern agricultural states, acquiesced in by the people, which we regarded as so expanding the significance of the words "public purpose," when applied to taxation, as to make the imposition of taxes for such a purpose constitutional. State v. Nelson Co., 1 N. D. 88. But there is no resemblance—not the faintest—between the enforced obligation resting upon all alike to keep a portion of the population destitute of means and credit from becoming a public charge by affording them temporary relief, and the voluntary obligation assumed by the unfortunate citizen on receiving public aid to pay back to the public treasury the value of that aid. The obligation resting upon him who has been supplied with seed grain, common to all other taxpayers in the county, to contribute the funds to furnish him this seed grain, is, when legally apportioned, a tax. The obligation resting upon him alone to pay to the county the value of this property is a debt pure and simple, without a single element of a tax about it. . No part of the money paid by him in discharge of this obligation goes to the support of the government. Not a penny of it is paid to buy seed grain for others. It is paid only to discharge a personal debt to the county for aid received.

Another consideration affords strong evidence that the claim for the value of the seed grain furnished is not a tax, although placed upon the tax roll, to be collected as a first lien out of the real estate. Practically every state constitution embodies a provision for uniformity in taxation. The great purpose of such articles is to prevent unjust discrimination in taxation. Whenever there is a tax violative of the terms of such a provision, we must expect to find the tax an unjust one. Now, it is clear if the obligation to pay for seed grain is a tax, it is in conflict with the terms of § 1925 of the organic act of the territory of Dakota, in force at the time the act of 1889 was passed; and that the act of 1890 is in conflict with the terms of § 176 of the constitution of this state in force when the latter act was passed. These provisions require uniformity of taxation. But, so far from there being any injustice in requiring the person who has been the recipient of aid to pay for the seed grain furnished him, the justice of such a policy is too palpable to justify comment. And yet no one can pretend that there is any uniformity in a system of taxation that imposes upon one or a few citizens, and upon his or their property, in addition to the burden resting upon all alike, an additional sum as a tax. We must therefore conclude that that which creates a plain violation of the terms of such a fundamental provision, if regarded as a tax, and yet bears no semblance to unjust discrimination, cannot possibly be a tax at all. The determination of this question is the pivotal point in the case. If this obligation is a tax in a proper sense, then the state may give it a priority of lien. If not a tax, then the legislature cannot, by designating it as a tax, give it any greater preference as a lien than could be given it should no such name be affixed to it. To postpone a legal existing lien upon real property to a subsequent lien by a statute enacted subsequently to the attaching of such prior lien is to impair the obligation of a contract. This object cannot be accomplished by indirection—by calling something a tax which is not a tax. The legislature could not by an act passed after the plaintiff's mortgage had been executed and become a lien upon the property, confer upon any person who should loan or advance money or money's worth to the mortgagor a lien upon

such property prior to that of the existing mortgage. Nor can the legislature lawfully give to a court or other public corporation or subdivision of the state any such priority in such a case unless the claim be for a tax, as a tax is known to the law. Neither can the state itself secure any such priority under such circumstances. When entering into contract relations with individuals, the state, or a municipal corporation thereof, is to be treated the same as an individual. It cannot call or charge up the amount of a loan as a tax, and by that device confer upon the loan all the qualities of a tax. If it could, and in this manner insert a lien for this pseudo tax ahead of existing liens, the holder of security upon real estate would be at the mercy of the state, despite the supreme law of the land preventing the impairing the obligations of a contract by any state. If the state can make this claim a tax, then there is no limit to its power by definition to confiscate the securities of others. The amount advanced to the individual by the state would not affect the right of the state to call it a tax. Neither would the purpose for which the advance was made, nor the exigency to meet which the sum was loaned, limit in any manner the power of the legislature to invest such loan with all the attributes of a tax. The loan by the public supplanting the first lien upon real property might be so great as to work a destruction of the lien supplanted. But it is sufficient to condemn a law that it works any impairment, however slight, of the obligations of a contract. To affect a dollar of a prior lien by subsequent legislation is as vicious before the law as to destroy the lien altogether. Walker v. Whitehead, 16 Wall. 314.

The mortgagee had, when the law of 1889 was enacted, secured a first lien upon the real estate covered by the mortgage. It was for this he had contracted with the mortgagor. Any law affecting the priority of this lien, or giving the mortgagor authority to do so, clearly impairs the obligation of this contract. Said the court in Railroad Co. v. Hamilton, 134 U. S. 296, at page 301, 10 Sup. Ct. Rep. 546: "There was no statute in force at the time the mortgage was executed giving any priority to subsequent mechanic's lien; and by the mortgage the mortgagee took its vested priority beyond the power of the mort-

gagor or the legislature thereafter to disturb." The state cannot interfere with the remedy given by existing laws to enforce a contract when the consequence is an impairment of the creditor's rights. This doctrine has perhaps been more frequently enunciated and applied in the cases of an attempted statutory extention of the mortgagor's right to redeem made after the mortgage had been executed. The courts, including the final arbiter of the question, the federal supreme court, have very properly held that such a law impaired the rights of the mortgagee under his security, as they affected the price which the real estate would bring on foreclosure. No one would be willing to pay as much for a piece of land, the possession of and absolute title to which he could not secure for several years after purchase, as he would be willing to pay for the same land with a right to immediate possession, or possession after the lapse of only one year. A law giving a right to redeem where no such right existed at the time of the execution of the mortgage, or materially enlarging a right of redemption already existing at the time of the execution of such mortgage, would directly and inevitably lessen the value of the mortgagee's security, and therefore impair the obligation of the contract. In Howard v. Bugbee, 24 How. 461, the court adjudged as void, as impairing the obligation of a contract, a statute of Alabama conferring upon a judgment creditor of the mortgagor a right to redeem from mortgage foreclosure sale within two years thereafter, so far as such statute affected mortgages in existence when the law was passed. The court said: "The main ground of the defense in that suit was that the mortgage from Parsons, under which the defendant derived title, having been executed before the passage of the act providing for the redemption, the act, as respected this defendant, was inoperative and void, as impairing the obligation of the contract. The court of chancery so held, and dismissed the bill; but, on appeal to the supreme court, that court reversed the decree below, and entered a decree for the complainant. The case is now here on a writ of error to the supreme court. The only question involved in this case was decided in Bronson v. Kinzie, 1 How. 311. It was then held after a very careful and extended

examination by the court, through the chief justice, that the state law impaired the obligation of the mortgage contract, and was forbidden by the constitution. This decision has since been repeatedly affirmed. 2 How. 612; 3 How. 716. * * * We are entirely satisfied with the soundness of the decision in the above case, and with the grounds, and shall simply refer to them as governing the present case." The same doctrine is enunciated in Scobey v. Gibson, 17 Ind. 580; Inglehart v. Wolfin, 20 Ind. 32; Rucker v. Steelman, 73 Ind. 390; *ex parte* Pollard, 40 Ala. 77; Collins v. Collins, 79 Ky. 88; Coddington v. Bispham, 36 N. J. Eq. 574; Cargill v. Power, 1 Mich. 369; Maloney v. Fortune, 14 Iowa 417; Heyward v. Judd, 4 Minn. 483 (Gil. 375); Goenen v. Schroeder, 8 Minn. 387 (Gil. 344); Carrol v. Rositer, 10 Minn. 174 (Gil. 141); Phinney v. Phinney, 81 Me. 450, 17 Atl. Rep. 405. If a subsequent statute extending the time of redemption impairs the obligation of the mortgage contract, surely an act passed after the execution of the mortgage, which confers upon the mortgagor power to destroy the mortgage lien by creating a lien upon the land superior to that of the mortgage, is a law impairing the obligation of a contract. The district court was right in adjudging the mortgage lien to be superior to both of the liens for seed grain, and the order and the judgment of that court are therefore affirmed. All concur.

