NELSON, Respondent, v. BADKER et al. (Jones, Appellant).

(163 N. W. 569.)

(File No. 4039.  Opinion filed June 26, 1917.)

1. **Chattel Mortgages—Sale by Mortgagor, Agreement For, Waiver of Lien by—Instructions.**

Where the undisputed testimony showed that mortgagee

agreed with mortgagor that the latter might sell the mortgaged property at public auction, proceeds of such sale to be received by a bank acting as clerk of sale, and applied upon the mortgage; that pursuant to such agreement mortgagor so sold the property, and in writing directed the bank to turn over the proceeds of sale to mortgagees, such arrangement and consent to sale did not waive or defeat the mortgage lien, or mortgagee's right to such proceeds; following Minneapolis Threshing Machine Company vs. Calhoon, 37 S. D. 542, 159 N. W. 127.

2. **Same—Defrauding Creditors—Sale by Mortgagor—Burden of Proof—Evidence, Sufficiency.**

A mortgage debtor, who contemplated having a public sale of his personalty in contemplation of his removal from the state, agreed with a chattel mortgagee having knowledge of mortgagor's intention, but not knowing what other debts, if any, mortgagor owed, that the latter might sell the mortgaged property at public auction, a certain bank to act as clerk of sale and to receive and apply the proceeds on the mortgage. Respondent, a creditor of mortgagor who sought to hold the bank as garnishee of said funds, offered no testimony tending to discredit mortgagee's proofs establishing said facts. The mortgagee further proved a full consideration for the note secured by the mortgage, including a large indebtedness mortgagor had been owing the bank. **Held,** that, the burden of proof being upon the plaintiff to affirmatively establish the alleged fraud in the taking of said mortgage, if any existed, and there being nothing connected with the giving of the note and mortgage inconsistent with honest motives on the part of mortgagee, the mortgage was not one in defraud of mortgagor's creditors.

3. **Same—Second Mortgage, Afterwards Cancelled, Whether Fraudulent as to Creditors?—Evidence.**

Where a mortgagee held a bona fide chattel mortgage for $2000.00, took a second mortgage upon the same property for $2500.00 with no new consideration, the agreement between the parties being that after a contemplated sale of his personalty by mortgagor, including the mortgaged property, the mortgagee would advance him $500.00; it appearing that after the sale some trouble arose, when mortgagee cancelled the second mortgage; **held,** that while said second mortgage would, to the extent of $500.00, have been a fraud against mortgagor's creditors, yet, the last mortgage being a matter independent of the first and mortgagee claiming no right thereunder, the taking of said second mortgage was not a fraud upon mortgagor's credit, when considered in connection with the first mortgage, under which latter the mortgagor, being agreed with mortgagee, sold the property at public auction, the proceeds

being taken and applied upon a mortgage debt by a bank as
sale clerk.

     Whiting, J., concurring specially.

Appeal from Circuit Court, Deuel County. Hon. CARL G.
SHERWOOD, Judge.

Action by John H. Nelson, against W. F. Badker, upon certain
accounts; defendant A. D. Jones being garnishee; defendant
H. E. Jones, intervening. From a judgment for plaintiff, defendant
appeals. Reversed, and remanded for further proceedings.

*Robert D. Jones* and *Case & Case,* for Appellant.

*W. W. Knight,* for Respondent.

(1) To point one of the opinion, Appellant cited: Hoyt v.
Clemens et al., (Iowa) 149 N. W. 442, L. R. A. Vol. 1915C, 166.

(2) To point two of the opinion, Appellant cited: Williams
v. Harris, 4 S. D. 22, 54 N. W. 926; 3 Pom. Eq. Jur. 1280; Pomeroy
v. Manhattan L. Ins. Co., 40 Ill. 398; National Bank of
America v. Indiana Bkg. Co., 114 Ill. 483; Shinn on Attachment
and Garnishment, 516; Moore v. Lowrey, 25 Iowa, 336.

Respondent cited: Hall v. Feeney, 22 S. D. 541; Grigsby
v. Larson, 24 S. D. 628; Minneapolis Threshing Mach. Co. v.
Calhoun, 159 N. W. 127; Loughlin v. Larson, 27 S. D. 376;
Maier v. Freeman, (Cal.) 53 A. S. R. 151.

McCOY, J. This action was brought by respondent, as plaintiff,
against one Badker, seeking to recover a judgment upon certain
accounts. The First National Bank of Gary and others were
made garnishee defendants. H. E. Jones, the appellant, became a
party to this action by intervention, claiming to be entitled to
certain moneys then in the hands of said garnishee First National
Bank of Gary under and by virtue of an alleged chattel mortgage
upon certain personal property securing the payment of a debt
of $2,000 from said defendant Badker to the said intervener; the
said moneys in the hands of said garnishee bank being the proceeds
of a sale of said mortgaged personal property. It is the
contention of the respondent that the said intervener waived his
lien under said chattel mortgage, if any he had, by consenting to
a sale of said property by said mortgagor Badker, and also that
the said mortgage of the intervener is fraudulent and void on
the ground that the same was made and entered into for the
purpose and with the intent of hindering and delaying the creditors

of said Badker in the collection of their debts.   Upon the trial of said action it appeared that the defendant Badker was indebted to plaintiff, the respondent, in the sum of $279.97, and upon verdict being rendered in favor of plaintiff upon all the issues judgment was rendered in favor of plaintiff for the said sum of $279.97, and that the said garnishee pay said amount to plaintiff, and that the said intervener take nothing by this action, and that plaintiff have and recover of said intervener his costs and disbursements.   From this judgment and an order overruling the intervener's motion for a new trial, appeal has been taken by the intervener to this court.

On the trial of the case the appellant excepted to the following instruction upon the ground that there is no evidence in the case to support such instruction or to entitle the jury to determine whether or not the intervener waived his said mortgage:

"If you do not find that Mr. Jones waived his mortgage, that is, consented to a sale, and that the money after the sale be the money of Badker, if you should find that he had a mortgage, and you find that he consented to the sale without any reservation whatever, or any agreement that the money should be paid to this bank for him, then he would waive his mortgage."

[1] The appellant also specifies that there is no testimony in this case tending to show that said intervener did not act openly and honestly in the matter of the sale of the personal property of Badker and having the money placed in the bank at Gary for his benefit in lieu of his mortgage.   It appears from the undisputed testimony in this case that the mortgagor Badker was contemplating removing from the state of South Dakota and desired to have a public sale of his personal property covered by the said mortgage of the intervener; and that prior to the said sale the intervener, as said mortgagee, and the said mortgagor entered into an arrangement or agreement by which it was stipulated that said mortgaged property should be sold at public auction, and that the proceeds of such sale should be received and taken possession of by the said First National Bank of Gary to be applied upon intervener's mortgage, that the said bank should act as the clerk of sale and should receive the proceeds of the sale of said mortgaged property to be applied on the payment of the $2,000 mortgage, and that in pursuance of such agreement the said

Badker in writing directed said garnishee bank to turn over to said intervener the proceeds derived from the sale of said property. We are of the opinion that this arrangement and consent to sale by the intervener did not in any manner waive or defeat his mortgage lien or his right to the proceeds of the sale of said mortgaged property. In the case of Minneapolis Threshing Machine Co. v. Calhoun, 37 S. D. 542, 159 N. W. 127, this court held that, where the mortgagee under a chattel mortgage consented that the mortgagor might sell the property at public sale on condition that the proceeds of sale be collected by another party and by him applied to the payment of the mortgage debt, the agreement amounted to the creation of an express trust in the proceeds in the hands of such third party, who could not legally apply it to any purpose other than the satisfaction of the mortgage and the mortgagor could not revoke his authority or control the proceeds of the sale, except as to any surplus over the indebtedness secured by the mortgage. In that case the mortgaged property was sold at public auction under an arrangement in principle the same in effect as the arrangement for sale in this case.

[2, 3] The appellant also contends that the evidence is insufficient to show or sustain the finding that the mortgage under which the intervener claimed was fraudulently made with intent to hinder and delay the creditors of said mortgagor in the collection of their debts. We are of the opinion that the appellant is right in this contention, and that there is nothing in this case, so far as the mortgage under which the appellant claims is concerned, which in any manner is inconsistent with honest and perfectly legitimate intentions. Upon the issue as to whether or not the said $2,000 mortgage under which the intervener claimed was fraudulent, the burden of proof was upon the respondent. From the evidence it appears that the $2,000 mortgage was made and executed on the 2d day of February, 1914, securing a note of that date for $2,000 due March 1, 1914, with interest at the rate of 10 per cent. per annum. It appears that intervener is an attorney at law, and is also engaged in store and banking business. He testified that for some two years prior to February 2, 1914, he had been making personal loans to Badker, and then held his notes to the amount of about $500; that Badker then was indebted

to the bank of Gary in the sum of about $700, which indebtedness to said bank the intervener paid; that he then let Badker have about $800 in cash; that these three items constituted the consideration for the $2,000 note and mortgage; that he desired a first mortgage on the Badker property; and that he took the $800 cash he gave Badker from the store drawer, and kept no other account thereof than as represented by the note. There is nothing in the evidence tending to show but what Badker then had a perfect right to give said mortgage or that intervener did not then have the perfect right to take the same. Intervener testified that he knew Badker contemplated going to Wyoming, and had in view a sale of the mortgaged property, but at that time he did not know what debts, if any, Badker was owing; that he subsequently, on February 13th, learned that Badker intended having a public sale of said property on February 16, 1914, and on that occasion the intervener entered into the agreement with Badker that the sale might be made if the bank of Gary clerked said sale and received the proceeds and applied the same on the $2,000 mortgage of February 2, 1914. The respondent offered no testimony whatever tending to discredit or impeach this testimony of intervener. Conceding that the jury had the right to disbelieve the testimony of the intervener, still there was no other testimony in the case that tended to establish fraud in the making of this mortgage. The burden of proof was upon respondent to affirmatively establish the fraud, if any existed. There is nothing in connection with the giving or making of this $2,000 note and mortgage inconsistent with honest motives on the part of the intervener.

Intervener also testified that on the 14th day of February, 1914, Badker gave him a second mortgage covering the same property securing $2,500, but with no new consideration, the agreement between intervener and Badker being that after the sale was over intervener would advance him $500; that after the sale was made and trouble arose, said $500 note, mentioned in said second mortgage, was canceled by intervener. The giving of the last-mentioned mortgage was a matter independent of the first mortgage, and to the extent of the $500 note would have been a fraud against the rights of creditors of Badker, but in

this case intervener is claiming no rights under the second mortgage. There is no testimony tending to show that the first mortgage was made with intent on the part of intervener to defraud any of the creditors of said mortgagor.

The judgment and order appealed from are reversed, and the cause remanded for further procedure.

WHITING, J. (concurring). I am of the opinion that there is some evidence from which the jury was justified in finding that the transaction between Jones and Badker was fraudulent as to the other creditors of Badker, and therefore I am unable to concur in that part of the foregoing opinion holding that there was insufficient evidence to warrant the jury in finding such transaction fraudulent. But it seems clear to me that the trial court committed reversible error in receiving proof of indebtedness owing by Badker to other creditors when knowledge of such indebtedness was not brought home to Jones. It also seems to me that the trial court committed reversible error in receiving in evidence proof of what it was claimed Badker had stated to one Anderson, which statement was not made in the presence or hearing of Jones, and absolutely no foundation laid that would make such evidence competent as against Jones.

I therefore concur in the result reached by my colleagues.