ROLETTE STATE BANK, a Corporation, of Rolette, North Dakota, Respondent, v. MINNEKOTA ELEVATOR COMPANY, a Foreign Corporation, Appellant.

(195 N. W. 6.)

Chattel mortgages — exercise by purchaser of mortgaged property of dominion inconsistent with rights of mortgagee constitutes conversion.

1. A purchaser of property covered by a chattel mortgage takes it subject to the lien thereof, and the exercise by him of dominion over the property inconsistent with and in defiance of the rights of the mortgagee therein, constitutes a conversion.

Chattel mortgages — mortgagee consenting to sale of property on condition that purchaser pay purchase price to extent of mortgage claim held not waiver of lien: mortgagee may sue for conversion, purchaser failing to pay claim out of purchase price of property.

2. Where a mortgagee of personal property consents to a sale thereof on condition that the purchaser pay the purchase price to the extent of his mortgage claim to him, the mortgagee does not thereby waive his lien; and where the purchaser fails to comply with the condition, denies the lien, and claims to

Note.—(1) Sale by mortgagor without authority of mortgagee as conversion, 5 R. C. L. 446; 4 R. C. L. Supp. 328; 5 R. C. L. Supp. 284.

(2) Agreement to apply proceeds of sale upon mortgage debt, see note in 36 A.L.R. 1384; 5 R. C. L. 445.

(3) Demand of property followed by refusal to return the same evidence of conversion, see 26 R. C. L. 1124; 4 R. C. L. Supp. 1699; 5 R. C. L. Supp. 1441.

(4) Measure of damages for wrongful conversion of personal property, see 26 R. C. L. 1148; 4 R. C. L. Supp. 1699; 5 R. C. L. Supp. 1443.

(6) General rule as to right of jury to take to jury room exhibits in the case, see 16 R. C. L. 301; 3 R. C. L. Supp. 560; 4 R. C. L. Supp. 1051.

hold the property discharged from the mortgage, the mortgagee may maintain an action for conversion against him.

**Trover and conversion — demand not necessary where obviously unavailing before bringing action for conversion.**

3. A demand followed by a refusal to deliver personal property is but evidence of conversion; and where obviously such demand would be unavailing, none need be made before bringing an action for conversion. More v. Burger, 15 N. D. 345.

**Trover and conversion — measure of damages for wrongful conversion of personal property; stated.**

4. The measure of damages for the wrongful conversion of personal property is either, (1) the value of the property at the time of conversion with interest from that time; or, (2) if the action has been prosecuted with reasonable diligence, the highest market value of the property at any time between the conversion and the verdict without interest, at the option of the injured party; and, (3) a fair compensation for the time and money properly expended in pursuit of the property. Comp. Laws 1913, § 7168.

**Agriculture — lien of county for seed grain and feed cast only on crop produced.**

5. Under the provisions of article 24, chapter 42 of the Political Code, as amended, the lien of a county for seed grain and feed furnished, is cast only on the crop produced from such seed and feed.

**Appeal and error — action of court in not sending papers received in evidence out with jury not erroneous, unless discretion abused.**

6. Section 7624, Comp. Laws, 1913, providing, "Upon retiring for deliberation the jury may take with them all papers which have been received as evidence in the cause except depositions or copies of such papers as ought not in the opinion of the court to be taken from the person having them in possession," is permissive only and not mandatory; and except in case of an abuse of discretion, the action of the trial court in not sending papers received in evidence out with the jury will not be held erroneous.

Opinion filed July 26, 1923.   Rehearing denied September 24, 1923.

Agriculture, 2 C. J. § 83 p. 1012 n. 95.   Appeal and Error, 4 C. J. § 2809 p. 829 n. 33.   Chattel Mortgages, 11 C. J. § 339 p. 625 n. 45; § 342 p. 630 n. 46, 50. Trover and Conversion, 38 Cyc. pp. 2033 n. 76; 2092 n. 56; 2094 n. 61; 2096 n. 65; 2101 n. 96.

Appeal from the District Court of Rolette County, *Burr,* J.

Action by the Rolette State Bank against the Minnekota Elevator Company.

From a judgment for plaintiff and an order denying its motion for a judgment non obstante or for a new trial, defendant appeals.

Affirmed.

*F. B. Lambert,* for appellant.

"A conversion does not take place where the relation of the parties is that of debtor and creditor." Bowers, Conversion, § 322.

"Obligation could not possibly exist by virtue of any legal duty but if it existed at all it existed by virtue of a special contract between the plaintiff and defendant." Knapp v. Soo R. Co. 34 N. D. 466, 159 N. W. 81.

"Plaintiff having elected to bring an action ex delicto, must stand or fall by the allegations as made. The power to amend is limited. A new and distinct cause of action cannot at the time of the trial, without consent, be thrust into a complaint by amendment."

"The character of an action as brought must be determined by the complaint."

"In most cases more than one remedy is applicable and plaintiff has his election; while in others an action for conversion does not lie, though one for damages for a breach of contract may. After the shipper elects to sue for conversion and is unable to or fails to establish the elements necessary to constitute conversion, he must fail in that form of action. The burden is on the shipper when he elects to seek the benefit of the measure of damages in an action for conversion, to prove the act of conversion by showing a wrongful disposition, or a wrongful withholding of the property." Taugher v. N. P. R. Co. 129 N. W. 750; Supervisors v. Decker, 30 Wis. 624.

"Under the principle that the plaintiff must recover upon the cause of action set forth in his pleading, if at all, the complaint in an action for conversion cannot entitle the plaintiff to any relief where all the evidence points to a sale and not a bailment." Sonnesyn v. Akin, 12 N. D. 227.

"Plaintiff must recover according to the allegations of the complaint, if at all, and if the proof establishes a different cause from that which he alleges, although a good one, he cannot recover." Soden v. Murphy (Col.) 94 Pac. 353.

"A complaint cannot be amended so as to set up a new cause of

action even though they are both on contract." Burke v. Welo, 190 N. W. 269.

"In this case the owner of a chattel mortgage authorized and requested the mortgagee to haul away the wheat covered by the mortgage, and sell the same and pay him (the mortgagee) from the proceeds. Held, that such consent to a private sale of the property operated as an implied waiver of the mortgage, whereby the mortgage was defeated." Peterson v. Elevator Co. 9 N. D. 55.

"Until the right is definitely asserted and possession is demanded by the mortgagee it is a pure lien." James v. Wilson, 8 N. D. 186, 189; Towne v. Elev. Co. 8 N. D. 211.

"Held further that this court cannot judicially notice the value of grain at a given date, even where the evidence shows its value at a date two weeks prior to the date in question." Towne v. Elev. Co. 8 N. D. 211.

"Where mortgaged wheat is sold to an elevator company and no act of conversion is shown until a demand and refusal to deliver, it is error to direct a verdict for the plaintiff mortgagee suing for conversion, when the only evidence of value relates to a time practically a month prior to demand and refusal." Citizens N. B. v. Osborne-McMillan Elev. Co. 21 N. D. 335, 131 N. W. 266.

"A bona fide reasonable detention of goods by one who has assumed some duty respecting them, for the purpose of ascertaining their true ownership, or of determining the right of the demandant to receive them will not sustain an action for conversion." 38 Cyc. 2029; Blankenship v. Berry, 28 Tex. 448; Zachary v. Pace, 9 Ark. 212, 47 Am. Dec. 744.

"In an action by a second mortgagee of seed against an elevator company for conversion of such seed, proof of a prior mortgage thereon duly filed, and unpaid, does not constitute a defense, but when properly brought before the court may be shown in mitigation of damages, to the extent of the amount due on and secured by the prior mortgage." Citizens Nat. Bank v. Elev. Co. 21 N. D. 335, 131 N. W. 266.

"That the question of interest is a matter for the jury and that the court has no authority to direct jury's finding on this question." Burke v. Minnekota Elev. Co. 186 N. W. 948.

*Verret & Stormon,* for respondent.

A conversion is an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. 38 Cyc. 2005.

A complaint which alleges formally or in substance that the plaintiff is the owner of and entitled to the possession of property therein described and that the defendant wrongfully converted the same to his own use to plaintiff's damage in a sum named, states all that is necessary to sustain an action for conversion. 38 Cyc. 2066.

A waiver is a matter of fact to be shown by the evidence. 40 Cyc. 267.

The burden is upon the party claiming the waiver to prove it by such evidence as does not leave the matter doubtful or uncertain. 40 Cyc. 269; Allsopp v. Joshua Hendy Mach. Works, 5 Cal. App. 228, 90 Pac. 39; Joyce v. Sage Bros. Co. 206 Mass. 9, 91 N. E. 996; Bryant v. Kenyon, 123 Mich. 151, 81 N. W. 1093; Howard v. Seattle Nat. Bank, 10 Wash. 208, 38 Pac. 1040.

The general rule is that a conversion action will not lie against one rightfully in possession, and that demand and refusal are usually necessary to prove conversion, but demand and refusal are superfluous however, whenever conversion can be otherwise shown. 38 Cyc. 2032.

"The purpose of proving a demand by the plaintiff, and a refusal by the defendant, to deliver the property for the recovery of which trover is brought, is to show a conversion, and it is the generally accepted rule that such demand and refusal are unnecessary if the act of the defendant is tortious and amounts to a conversion, regardless of whether a demand is made." 26 R. C. L. 1122; Willard v. Monarck Elev. Co. 10 N. D. 400, 87 N. W. 996; Adams v. Castle (Minn.) 67 N. W. 637; Hogan v. Elev. Co. (Minn.) 69 N. W. 1; James v. Wilson, 8 N. D. 186, 77 N. W. 603; Adams v. Wildes, 107 Mass. 123; Gardner v. Morrison, 12 Ala. 547.

"This right of possession must be an absolute right; one not contingent nor dependent upon circumstances or conditions." Rankine v. Greer, 38 Kan. 343, 16 Pac. 680; Re Eysaman (N. Y.) 3 L.R.A. 599, 20 N. E. 613.

Repeals by implication are not favored and if by fair constructions the two statutes can be made to stand together, the court should give

them such construction. Merritt v. Gibson, 15 L.R.A. 277, 27 N. E. 136; Tippecanoe Co. v. Mitchell, 15 L.R.A. 520, 30 N. E. 409.

Existing law is not intended to be changed unless such intention plainly appears. Page v. Lewis, 18 L.R.A. 170, 15 S. W. 389.

"The jury may take with them all books of account and all papers which have been received in evidence, except depositions, etc."

It is not made the duty of the court in the first instance to send out the papers introduced; but, when requested by either party, or by the jury, the papers should be sent out, and a failure to do so constitutes error. McMahon v. Iowa Ice Co. 114 N. W. 203; State v. Young, 110 N. W. 292.

*A. G. Divet,* amicus curiæ.

One of the established rules of construction of doubtful statutes is "A result which may follow from one construction or another of a statute is always a potent factor, and is sometimes in and of itself conclusive as to the correct solution of the question as to its meaning." Lewis's Sutherland, Stat. Constr. 2d ed. § 487.

"So, in a doubtful case, and where the language of the statute does not preclude us from so holding, we must presume that the legislature acted with full knowledge of the local conditions and of the financial needs of the state and its citizens." Strand v. Martin, 30 N. D. 170.

"If the sense be doubtful, such construction should be given it, which will not conflict with the general principles of law, which it may be assumed, the legislature would not intend to disregard or change." Lewis's Sutherland, Stat. Constr. 2d ed. § 447.

"The effect of a new statute in conjunction with other statutes, with reference to established institutions, systems and policies, is always in view. It is presumed that there is no intention to effect them any further than the plain terms of the new statute require." Lewis's Sutherland, Stat. Constr. 2d ed. § 487.

"The legislature is not to be lightly presumed to have intended to reverse the policy of its predecessors, or to have embodied a fundamental change in the long established policies of the law." Robinson's Case, 131 Mass. 376; Re Goodell, 39 Wis. 332, 20 Am. Rep. 43.

NUESSLE, J. This action is for damages on account of the conversion of certain grain. The plaintiff in its complaint sets out and al-

leges that it was the owner of a certain chattel mortgage covering grain raised by its debtor Goode; that it was entitled to possession thereof by virtue of such mortgage lien for the purpose of foreclosing; that the defendant wrongfully converted the said grain, and plaintiff claims damages on account thereof. The defendant, answering, denies the mortgage lien of the plaintiff; denies that the plaintiff has been damaged by any act of the defendant; alleges that plaintiff is estopped from asserting any claim against the defendant; and alleges that the right of the plaintiff, if any, to the grain by reason of the alleged mortgage lien is second and subsequent to the lien of the county of Rolette, and that the plaintiff was not, therefore, injured by any act of the defendant in connection with said grain. On the issues as thus made, the case was tried to a jury and a verdict returned for the plaintiff and judgment entered thereon. At the close of the plaintiff's case, and again at the close of the whole case, the defendant moved for a directed verdict. Subsequent to the return of the verdict, the defendant moved in the alternative for judgment notwithstanding the verdict or for a new trial, which motion was denied. This appeal is from the order denying said motion and from the judgment.

The defendant and appellant predicates error on this appeal on account of the rulings of the court during the course of the trial; on account of the trial court's refusal to give certain requested instructions and its given of certain other instructions; on account of the trial court's not permitting the jury, when they retired to deliberate on their verdict, to take with them certain papers which had been received in evidence; and by reason of the trial court's denial of the defendant's motion for judgment non obstante or for a new trial.

There is little dispute as to the facts. It appears that one Goode gave a chattel mortgage for $2,000 on his crop for the year 1921 to the plaintiff bank. In 1920 Goode had obtained seed and feed from the county of Rolette and the county had perfected a lien on account of such seed and feed so furnished. In September, 1921 Goode hauled at least a portion of the mortgaged grain to the defendant's elevator. The plaintiff was endeavoring to realize on its mortgage. The county of Rolette was likewise endeavoring to collect on account of seed and feed furnished in 1920. Goode, the sheriff of Rolette county, and the agent of the plaintiff, met at the defendant's elevator, with the agent

in charge thereof, and made arrangements as to what should be done with the grain in controversy. It was there agreed that the grain upon which the plaintiff had a mortgage should be purchased by the defendant and that the plaintiff should waive its mortgage as against the grain, excepting as to the amount of $400, which amount should be paid to the plaintiff by the defendant from the proceeds of the grain bought by it. This was on September 3d, 1921. Subsequently the defendant bought the grain, but paid the money directly to Goode. Plaintiff was not paid. A demand was made on defendant for the grain in April, 1922, which was refused, and plaintiff brought this action in conversion.

The only matter of fact in dispute among the parties is as to what the arrangement was with reference as to how and to whom the purchase price of the grain should be paid. The plaintiff's contention is that the agreement was that the defendant should pay the $400 direct to it. The defendant's contention is that the agreement was that the purchase price of the grain should be paid to Goode and that Goode should pay the plaintiff. This question was left to the jury, and they found that the plaintiff's version was the correct one.

The plaintiff's contention is that when the defendant purchased the grain and paid therefor contrary to the arrangement as agreed upon and thereafter denied plaintiff's claim of lien that it thereby converted the same; that although a demand was subsequently made and refused that such demand and refusal were not necessary to establish such conversion; that the conversion took place at the time the grain was disposed of, contrary to such agreement, irrespective of any subsequent demand. On the other hand, the defendant contends that there was no conversion; that if the plaintiff has any cause of action that it is merely one on contract for the amount that the plaintiff was to have; that if there was any conversion that it was as of the date of demand and refusal, and the value of the grain at that time is not shown; that by its conduct, the plaintiff is estopped to assert any claim to the grain as against defendant; furthermore, that the county of Rolette had perfected its seed lien against Goode for the year 1920 in an amount greater than the value of the grain alleged to have been converted, and that the same is still unpaid; that such lien is a continuing lien as against any and all crops of every description grown by Goode during

the year 1920 and subsequent years, prior and superior to the lien of the plaintiff's or any other mortgage, and though the grain in question has been disposed of contrary to the agreement, that the plaintiff suffered no injury thereby for the reason that on account of the county's continuing lien the plaintiff's interest by virtue of the mortgage was of no value.

It will thus be seen that the questions raised by the contentions of the various parties resolve themselves into: First, as to whether there was a conversion; second, whether a demand and refusal was necessary; and third, whether under the circumstances as disclosed, the defendant can establish the alleged lien of Rolette county as a defense in this particular case. Whether the court erred in its rulings, either as to the admission of evidence or in denying the defendant's motion, or in giving or refusing to give instructions, will depend on the answers to these questions.

There is no doubt but that the holder of a chattel mortgage may maintain an action in conversion against one who wrongfully asserts a right to the property mortgaged in defiance of the right of the mortgagee. That is conceded. In this case the plaintiff had waived its lien excepting as to the sum of $400, but did claim a lien to that extent. The defendant knew of this claim of the plaintiff. It was agreed that the defendant might buy the grain on condition, and that condition was that the proceeds to the extent of the lien should be by the defendant paid to the plaintiff. The defendant did buy the grain, but contrary to the agreement it paid the money to Goode, the mortgagor, and thereafter denied the lien of plaintiff's mortgage. It seems to us that this was such an exercise of dominion over the property inconsistent with, and in defiance of, the rights of the plaintiff as to constitute a conversion. Taugher v. Northern P. R. Co. 21 N. D. 111, 129 N. W. 747; Citizens Nat. Bank v. Osborne-McMillan Elevator Co. 21 N. D. 335, 131 N. W. 266. See also note in 24 Am. St. Rep. 795. There was no waiver of its lien as to the $400 on the part of the plaintiff. The question of waiver is a question of intent. Wonser v. Walden Farmers Elevator Co. 31 N. D. 382, 153 N. W. 1012. And there was nothing inconsistent with an intention to insist on its lien when plaintiff authorized Goode to sell, and defendant to buy, on condition that defendant pay the purchase price to the extent of $400 to it. Rather

it was wholly consistent with an intention not to waive. The defendant had the right to purchase. But so far as the lien was concerned, on condition only, and that condition it failed to comply with. Therefore, to the extent of $400 the plaintiff's lien was effective as against the purchaser. Nelson v. Badker, 39 S. D. 108, 163 N. W. 569; Shortridge v. Sturdivant, 32 N. D. 154, 155 N. W. 20. Thereafter, the denial of the lien; the refusal to recognize the plaintiff's rights in the grain, amounted to a conversion.

Demand and refusal are not necessary in order to constitute a conversion. They are only evidence thereof. Bowers, Conversion, §§ 91, 323. Where one lawfully and properly comes into the possession of personal property, a demand and refusal may be necessary to establish a conversion. Citizens Nat. Bank v. Osborne-McMillan Elevator Co. supra; 38 Cyc. 2032; Bowers, Conversion, § 323. But where a demand would be unavailing, none need be made. More v. Burger, 15 N. D. 345, 107 N. W. 200, and authorities cited; Hahn v. Sleepy Eye Mill. Co. 21 S. D. 324, 112 N. W. 843; 38 Cyc. 2032 and cases cited; Bowers, Conversion, § 326 et seq. In this particular case we do not believe that it was necessary. Here defendant at all times maintained that it had rightfully purchased the grain, and that the plaintiff's lien was waived. It claimed to own the grain discharged from the lien. Its position at all times was that if plaintiff had any right of action against it, that right was in contract. It is plain that defendant considered the lien of the mortgage discharged from the time of the purchase of the grain, and would at all times have refused the demand. True a demand was made and refused, but since a demand was not necessary, the conversion dates not from the time of the demand but from the time of the purchase of the grain contrary to the terms of the agreement and the denial of plaintiff's lien. Tugher v. Northern P. R. Co. supra. Having at all times denied the lien of the plaintiff, it cannot now say that the plaintiff should have made a demand. Great Western Smelting & Ref. Co. v. Evening News Asso. 139 Mich. 55, 102 N. W. 286. It was, therefore, sufficient to prove the value of the grain at that time. And the measure of damages was that value to the extent of plaintiff's lien with interest from such date. Comp. Laws 1913, § 7168.

Holding thus, there remains for consideration the question of wheth-

er or not the county of Rolette had a valid seed lien covering the grain in question, and if so, whether the defendant can set it up as a defense in this action. There is no question that if the alleged lien of the county was a valid claim that it exceeded in amount the value of the grain claimed to have been converted; that if the defendant may plead and prove it as a defense, then and in that case the plaintiff can have no recovery. Under the law of this state, a chattel mortgage creates only a lien in favor of its mortgagee. Under that mortgage he has a right to the possession of the property for purposes of foreclosure. All that he can realize is the value of his interest. If there are liens prior and superior to his which consume the value of the property, then his interest is without value and he is not damaged. Citizens Nat. Bank v. Osborne-McMillan Company, supra. That being the case, it was permissible and proper for the defendant to plead and prove prior and superior liens on the property in question, if any there were.

The lien of Rolette county is claimed under the provisions of article 24, chapter 42 of the Political Code, as amended, being §§ 3471 to 3490, inclusive, Comp. Laws 1913, as amended. The defendant's contention is that under the terms of the statute the lien is a continuing lien, not only as against the crop grown from, and during the season for which, seed and feed were furnished, but *each year thereafter* upon all crops grown by the lien or to whom such seed and feed were furnished, and until the debt is paid. The particular section on which its contention is based is § 3482, Comp. Laws 1913, as amended in 1918, and reading as follows:

"Under the filing of the contracts provided for in § 3480, the county shall acquire a just and valid lien upon the crops of grain and feed raised *each year* by the person receiving seed grain and feed to the amount of the sum then due to the county upon said contract, which shall as to the crops covered thereby have priority over all other liens and incumbrances thereon, except threshers and labor liens. . . . The filing and recording of said contract shall be held and considered to be full and sufficient notice to all parties of the existence and extent of said lien . . . which shall continue in force until the amount covered by said contract shall be fully paid."

It will at once be seen that the difficulty arises by reason of the words, "each year," as used in this enactment. It must be conceded

that those words were unfortunately used, and that the statute is rendered somewhat ambiguous thereby. However, after a careful examination of the various enactments beginning with the original enactments, chapters 152, 153 and 154, Laws of 1890, we are of the opinion that the statute contemplates that the lien shall cover only those particular crops raised during the cropping season for which the seed and feed were so furnished. The chapter in question has been considered by this court on various other occasions. The questions then raised and considered by the court were different from that now presented. See State v. Nelson County, 1 N. D. 88, 8 L.R.A. 283, 26 Am. St. Rep. 609, 45 N. W. 33; Yeatman v. King, 2 N. D. 421, 33 Am. St. Rep. 797, 51 N. W. 721; and Strand v. Marin, 30 N. D. 165, 152 N. W. 280. However, we believe that the views of the court as expressed in those cases as to the purpose of the legislation and the reasons impelling its enactment are pertinent in passing on the question now raised. In those cases the court said that the purpose of the legislation was to render aid and assistance to needy farmers to the end that they might not become public charges; that the aid so rendered was in the nature of a loan and to enable the recipients to re-establish themselves in their occupations; that the necessity for such legislation arose by reason of previous adverse seasonal conditions and failures of crop. It will be noted that while amendments have been made to the original enactment, and particularly at the special session of 1918, that at such times similar reasons existed and were expressly declared. See §§ 5, 20 and 21, chapter 13, special session laws 1918. In addition to those reasons, there existed another and peculiar reason for the legislation arising through the exigencies of the moment on account of the then pending World War, and as indicated by the concurrent resolution passed immediately following the passage of the act, which resolution provided for the printing and distribution of copies thereof, reciting:

Whereas, this special session of the Fifteenth Legislative Assembly was called for the purpose of enacting war measures, and,

Whereas, principal among these measures was the enactment of laws for the purpose of encouraging production of every possible pound of food for ourselves and our allies. . . .

It seems apparent that the legislature did not intend that any other crops than those raised in the particular year in which seed and feed

were furnished should be charged with the lien therefor. Any other intention would have been subversive of the underlying purposes of the legislation because a lien on the crops of succeeding years would have made it difficult for the recipient of the aid extended to thereafter help himself by using his crops for such years as security; would have made it difficult for him, did the need arise, to secure seed or credit from other than governmental sources. In short, such an interpretation as contended for by appellant would be either unwarranted, if the crop raised were sufficient to meet the needs of the lienor, or if insufficient, would tend to make the recipient the perpetual debtor of the county—in the one case, unnecessary, in the other, defeating the declared purposes of the act.

Furthermore, is it not possible to obtain some light as to the intention of the law-makers when enacting and amending § 3482, by a consideration of other sections of the statute touching crop liens? § 6707, Comp. Laws 1913, provides, "A lien by contract upon crops shall attach only on the crop *next maturing* after the delivery of such contract." Section 6851 provides, "Any person who shall furnish to anyone seed to be sown or planted on the lands owned or contracted to be purchased, used, occupied or rented by him shall . . . have a lien upon all the crop produced *from the seed so furnished,* to secure the payment of the purchase price thereof." Both of these sections have long been in effect. They indicate a consistent legislative purpose to limit a lien that may be cast upon crops either by contract generally, or for seed furnished, to the crop next maturing.

The lien here claimed on behalf of Rolette County is contractual in its nature. See Yeatman v. King, 2 N. D. 421, 33 Am. St. Rep. 797, 51 N. W. 721, and Strand v. Marin, supra. It is in effect the same as the lien provided for in § 6851, supra. To warrant a holding that a new enactment institutes a wide departure from a long-established legislative policy, its terms must be certain and unequivocal. "The legislature is not to be lightly presumed to have intended to reverse the policy of its predecessors or to have embodied a fundamental change in the long-established policies of the law." Robinson's Case, 131 Mass. 376, 41 Am. Rep. 239. Considering the statute here involved in this light, is it not reasonable to say that the charge of the

lien for seed furnished was intended to be only on the crops grown and raised therefrom?

We believe also, that various provisions of the act contain in themselves certain indications that the lien provided for is a charge only on the crops grown from the seed and feed furnished. Sections 9 (3481) and 11 (3483) contain the provisions relative to the manner and means of collection of the indebtedness incurred on account of the grain furnished under the provisions of the act. Section 9 provides that the contract required to be signed by the applicant for seed shall have the same force and effect as a promissory note; that the amount of such indebtedness shall become due and payable on the first day of October *in each year in which seed grain and feed is furnished,* and if such indebtedness be not paid *before the fifteenth of October in that year,* it shall upon the taking of certain steps by the county officers become a lien against the land for which said seed and feed were furnished. Section 11 provides that on the first day of October *following the furnishing of any seed or feed,* a statement of the amount which will be due upon his note on *the date it becomes due* shall be mailed to each person obtaining aid under the act. The third paragraph of § 9 provides that if the indebtedness be not paid before November first of *such year,* (plainly having reference to the year in which such seed and feed were furnished), the sheriff is empowered to seize and sell sufficient of the applicant's grain to pay the indebtedness. The last paragraph of § 9 provides that the county treasurer shall deliver to the state's attorney a statement of all contracts which remain unpaid on the first day of January following the *said year,* (plainly having reference to the year in which the grain and feed is furnished), and it shall be the duty of the state's attorney to *immediately* commence an action for the placing of such indebtedness in judgment or for the foreclosure of the lien in accordance with the laws providing for the foreclosure of liens or of mortgages. The act fails to provide any method of realizing on account of the indebtedness from the crops of any other year, and does plainly provide a method for realizing from the crops of the particular year in which the seed and feed are so furnished. Nor does the act rest with thus securing the county in the payment of the indebtedness arising under it. Section 12 (3484) makes it a misdemeanor for anyone to sell, transfer, take or carry away or in any manner dispose

of the crop or any part thereof produced from the sowing or planting
of *said seed grain,* and provides a penalty therefor. It would seem
certain that if the legislature had intended that the counties should be
secured on account of this indebtedness by a lien on the crops grown
in succeeding years that it would have imposed the same penalty for
doing those same acts in connection with such crops that it imposed
when done with reference to the crops grown from the seed furnished;
and it is a convincing circumstance that the 1918 legislature amended
§ 3484 by increasing the severity of the penalty therein provided and
by striking out of that section the provision that "the title and right
of possession to the growing crop and to grain produced from said seed
shall be in the county which shall have furnished the seed until the
debt incurred for said seed shall have been paid." The act as it stood
prior to this amendment was inconsistent in that generally it contem-
plated and provided for a lien, and by § 3484 prior to the amendment,
provided that the *title* and right of possession to such crop should be
in the county. When this last provision was stricken from the section,
since it was done at the same time that the penal provision was
strengthened, the legislature obviously intended to correct this incon-
sistency and to make it possible for the lienor to lawfully use his grow-
ing crop, subject to the lien of the county, for purposes of securing
credit elsewhere should he so desire, and which he could not properly
do when the title was in the county, and at the same time to make the
county more secure by increasing the penalty as above stated. That
is, in line with the underlying purposes of the act, these amendments
were made in order to aid and not to further embarrass and hamper
the lienor.

Furthermore, in 1918, § 3482, heretofore quoted was amended so
as to read, "The county shall acquire a just and valid lien upon the
crops of feed and grain raised each year . . . *which shall as to the
crops covered thereby have priority over all other liens and incum-
brances thereon except threshers and labor liens."* Now § 6851 here-
tofore referred to was first enacted as chapter 150, Laws of 1887, and
provides for a seed lien which shall have priority over all other liens
and incumbrances. Section 6854, Comp. Laws, 1913, first enacted as
Chapter 88, Laws of 1889, provides for a thresher's lien which shall
have priority over all other liens and incumbrances; and § 6857,

Comp. Laws 1913, first enacted as chapter 63, Laws of 1895, provides for a farm laborer's lien prior to all other liens and incumbrances except seed grain and threshers liens. The legislature made these three liens, seed labor and threshers, superior to all others, this plainly on the theory that they who made the crop possible, they who furnished the seed for, performed the labor in producing, and threshed the crop should be first reimbursed therefrom. The furnishing of the seed is as essential to the raising of a crop as the labor expended in producing and saving, or in threshing it. Therefore, when the legislature, in dealing with the matter of this lien of the county for seed furnished, provided that the laborer and thresher who produced and threshed the crop should be first reimbursed from it, and made their rights superior to those of the county which had furnished the seed, but said nothing regarding a lien for the seed for subsequent crops, they clearly indicated that they considered that the lien of the county should apply only to the crops produced in the year in which the county furnished seed and feed. They considered the lien of the county the same as any other seed lien. Had they intended otherwise, they certainly would have afforded security for him who might furnish seed for subsequent years.

It is plain, therefore, that the trial court was right in holding that any claim that the county of Rolette may have had for seed and feed furnished to Goode in 1920 under the provisions of article 24, chapter 42 of the Political Code as amended, was not a lien on the crops raised by him in 1921.

There remains for consideration only the last assignment of error urged by the appellant. During the course of the trial certain papers were offered and received in evidence. The trial court, in instructing the jury, said with reference to the same, "It will not be necessary for you to take the exhibits into the jury room," and such exhibits were not taken by the jury when they retired to deliberate upon their verdict. To this instruction the appellant duly excepted. The appellant bases its last assignment upon the same, and upon the action of the court in not sending with the jury such exhibits. Its contention is that the statute, § 7624, Comp. Laws 1913, reading, "Upon retiring for deliberation the jury may take with them all papers which have been received as evidence in the cause except depositions or copies of such papers as ought not in the opinion of the court to be taken from

the person having them in possession," is mandatory; that under the terms of the statute, the papers in question having been received in evidence, the court had no discretion but to send them out with the jury when they retired. It is to be noted, however, that there was no request on the part of the jury for the exhibits in question, nor did counsel on either side request that they be so sent out. In any event, the appellant is in no position to complain of the action of the court in this respect, on the record as the same stands. That is, in the absence of a request for the papers on the part of the jury, or on the part of appellant that they be sent out. The statute is permissive only, and except in the case of an abuse of discretion, which cannot be said to have occurred in the instant case, the action of the trial court thereunder will not be held erroneous. See McMahon v. Iowa Ice Co. 137 Iowa, 368, 114 N. W. 203; McLean v. Crow, 88 Cal. 644, 26 Pac. 596; People v. Cochran, 61 Cal. 548; 38 Cyc. p. 1832. The assignment is without merit.

For the reasons as above set out, the judgment must be and is affirmed, with costs to the respondent.

BRONSON, Ch. J., and BIRDZELL, JOHNSON, and CHRISTIANSON, JJ., concur.