[File No. 6596.]

FRANK ROYAL, Respondent, v. MORRIS AUBOL, Individually, and Morris Aubol, Elgin Peterson and August Meyers, as Copartners under the Firm Name and Style of Sanish Implement Co., Appellants.

(287 N. W. 603.)

Opinion filed September 13, 1939.

*F. F. Wyckoff,* for appellants.

*R. E. Swendseid,* for respondent.

BURKE, J. This is an action in claim and delivery. It is alleged in the complaint that the plaintiff has a special interest in, is the owner of and is entitled to the immediate possession of certain described farming machinery by reason of chattel mortgage liens and bills of sale executed and delivered to the plaintiff by one Wilhelm Stark, now deceased. In their answer the defendants deny plaintiff's right to the possession of the described property and assert their right to retain possession thereof under mortgages and a bill of sale also executed by Wilhelm Stark. In the district court, the case was tried without a jury by stipulation of the parties and the plaintiff had judgment for the possession of the property described in the complaint or its value fixed at the sum of $610. The defendants have appealed from the judgment and have demanded a trial de novo in this court.

The property in controversy was all purchased by Wilhelm Stark from various implement dealers in Mountrail county. In the case of each purchase he gave the vendor a mortgage upon the equipment purchased to secure an unpaid balance of the purchase price. It is conceded that these purchase price mortgages and the indebtedness secured thereby are the property of the defendants. The specific property involved and its value as found by the trial court is as follows:

| | |
|---|---|
| 1 Van Brunt 20 shoe drill, valued at | $ 50.00 |
| 1 Emerson fanning mill, valued at | 10.00 |
| 1 John Deere 1927 model tractor, valued at | 400.00 |
| 1 three bottom 14″ tractor plow, valued at | 50.00 |
| 1 tandem disk harrow, valued at | 100.00 |

Plaintiff's claim has its origin in a chattel mortgage executed to him by Wilhelm Stark on December 6, 1929, and filed December 9, 1929. All of the property here in controversy was included among the items of property described in this mortgage. Renewals of plaintiff's mortgage were filed on November 8, 1930, and on September 26, 1931. The mortgage filed, December 9, 1929, was renewed by affidavit filed November 19, 1932, and that filed on September 26, 1931, was renewed by affidavit filed August 9, 1934.

On March 1, 1938, Wilhelm Stark executed and delivered to the defendants his bill of sale of the property described in defendants' mortgages. The defendants took possession of the property on March 12, 1938, and filed the bill of sale on March 29, 1938. On March 11, 1938, Wilhelm Stark also gave a bill of sale to the plaintiff, which the plaintiff filed the same day. In defendants' bill of sale the property in controversy is specifically described and in plaintiff's bill of sale the description in so far as it is pertinent here reads, "All my farming machinery including my combine."

The issues in this case, as framed by the pleadings, require a determination of the priorities as of March, 1938, of the mortgages held by the plaintiff and the defendants and the effect of the bills of sale executed by Wilhelm Stark in March, 1938, to the plaintiff and the defendants, respectively.

The plaintiff concedes that the original mortgages now owned by the defendants were superior to his mortgages at the time his mortgages were executed and filed, but asserts that under the provisions of chapter 175, Laws of North Dakota 1927, relating to the filing and renewing of chattel mortgages, defendants' mortgages had, in March, 1938, become void as to all persons.

Defendants' first mortgage, executed to secure an unpaid portion of the purchase price upon the drill and the fanning mill was dated March 22, 1927 and filed April 22, 1927. Chapter 175, supra, relied on by the plaintiff did not become the law of the state until July 1, 1927.

At the time of the execution of this mortgage, the law of this state relating to the renewal of chattel mortgages and the effect of a failure to renew was § 6762, Compiled Laws of 1913. Thus we must first decide which of these two statutes applies to the transactions with respect to this mortgage subsequent to July 1, 1927. Section 6762, Compiled Laws of North Dakota, 1913, reads as follows: "A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or encumbrancers in good faith after the expiration of three years from the filing thereof, except as hereinafter provided, unless within ninety days next preceding the expiration of such term a copy of the mortgage, and a statement of the amount of existing debt for which the mortgagee or his assignee claims a lien sworn to and subscribed by him, his agent or attorney, are filed anew in the office of the register of deeds in the county in which the mortgage was originally filed, and in like manner the mortgage and statement of debt must be again filed every three years or it ceases to be valid as against the parties above mentioned; provided, that mortgages of the personal property belonging to street car companies, telephone companies and telegraph companies need not be renewed; and, provided further, that trust deeds or other trust conveyances or instruments executed to secure bonds of corporations need not be renewed."

Section 1 of chapter 175, Laws of North Dakota, 1927, is an amendment and re-enactment of § 6762, supra. It reads:

"A mortgage of personal property ceases to be valid as against creditors of the mortgagor and subsequent purchasers or encumbrancers in good faith after the expiration of three years from the filing thereof, except as hereinafter provided, unless within ninety days next preceding the expiration of such term a copy of the mortgage, and a statement of the amount of the existing debt for which the mortgagee, or his assignee claims a lien sworn to and subscribed by him, his agent or attorney, are filed anew in the office of the Register of Deeds of the county in which the mortgage was originally filed, and in like manner the mortgage and statement of debt must be again filed every three years or it ceases to be valid as against the parties above mentioned. Provided, however, that any mortgage not renewed as herein provided for within three years shall become void as against all persons at the end of six years from the time of filing, and all mortgages not again

renewed at the end of six years as herein provided shall ·become void as against all persons at the end of nine years, and that all mortgages, even though so renewed at the end of nine years, shall become void as to all persons at the end of twelve years from the date of filing, and only three renewals of such mortgages may be filed under the provisions hereof.

"Provided, further, that mortgages of personal property belonging to street car companies, telephone companies, and telegraph companies need not be renewed; and provided further, that trust deeds or other trust conveyances or instruments executed to secure bonds of corporations need not be renewed."

While there is no language in that part of chapter 175, quoted above, from which it might be inferred that the legislature intended that the statute should be retroactive in operation and apply to mortgages executed before its effective date, as well as to those executed thereafter, there is such language in § 2 of the Act. The portion of § 2 referred to reads as follows: "Provided further, that all chattel mortgages that have not been renewed as provided for by § 6762 shall cease to be valid as against all persons at the end of six years from the date of filing the same, and shall likewise become void as against all persons, though properly renewed, at the end of six years if not again renewed at the end of nine years from the date of filing; and in no event shall any chattel mortgage remain valid as against any person for more than twelve years from the date of original filing, and at the time any such mortgage ceases to be valid under the terms hereof, the same shall be by the Register of Deeds removed from his files and destroyed."

The question of construction arises upon the interpretation that is to be given to the words "chattel mortgages which have not been renewed as provided for by § 6762." The chattel mortgages referred to might be those which had not been renewed according to § 6762, Compiled Laws of 1913, or it is possible that they might be those which have not been renewed according to § 6762 as amended and re-enacted by said chapter 175. If the first construction be adopted and chapter 175 be considered retroactive in its effect, the result will be that chattel mortgages, which under the law in force at the time of their execution and original filing would have become invalid only as to creditors and subsequent purchasers and encumbrancers in good faith, upon fail-

ure to renew, would now, upon the same condition, become void as to all persons at the expiration of six years from the original filing. Thus the statute would operate to destroy the contract lien both as between the mortgagor and the mortgagee and as between the mortgagee and subordinate mortgagees and lienors. If so construed it is doubtful if the statute would be constitutionally valid. Yeatman v. King, 2 N. D. 421, 51 N. W. 721, 33 Am. St. Rep. 797; National Bank v. Jones, 18 Okla. 555, 91 P. 191, 12 L.R.A.(N.S.) 310, 11 Ann. Cas. 1041; Jensen v. Wilcox Lumber Co. 295 Ill. 294, 129 N. E. 133; First Trust Joint Stock Land Bank v. Smith, 219 Iowa, 658, 259 N. W. 192. If this statute be construed to operate prospectively only, no such doubt would exist.

Where a statute is reasonably subject to two constructions, one of which will render it valid and the other of which will raise grave doubts as to its validity, the former construction will be adopted. State ex rel. Linde v. Taylor, 33 N. D. 76, 156 N. W. 561, L.R.A.1918B, 156, Ann. Cas. 1918A, 583; McCarty v. Goodsman, 39 N. D. 389, 167 N. W. 503, L.R.A.1918F, 160; Wood v. Byrne, 60 N. D. 1, 232 N. W. 303.

We therefore hold that the effect of the failure to renew the mortgage filed April 22, 1927, must be measured by the provisions of § 6762, Compiled Laws N. D. 1913.

Under the terms of this statute, "A mortgage of personal property ceases to be valid as against creditors of the mortgagor, and subsequent purchasers or encumbrancers in good faith" unless renewed in the manner provided. As heretofore stated, it is conceded that the lien of defendants' mortgage here under. consideration, that is, the mortgage upon the drill and fanning mill, was a valid first lien upon such property at the time of the execution and filing of plaintiff's original mortgage. Thereafter, the plaintiff extended no additional credit to the mortgagor, nor did he alter his position as to the mortgagor to his detriment. The several renewals of plaintiff's mortgage were given as security for the original debt and accrued interest. In Hanson v. Blum, 53 N. D. 526, 207 N. W. 144, this court, after the fullest consideration, construed the words "creditors" and "subsequent encumbrancers in good faith" as they are used in § 6762. It was there held that a "creditor" within the meaning of this statute "is one who, without no-

tice that the debt secured by an unrenewed chattel mortgage is unpaid, subsequently extends credit or alters his position as to his debtor to his detriment" and that "a 'subsequent encumbrancer in good faith'" was "a 'creditor' who takes security for his debt." Assuming, although it is not clear in the record, that plaintiff had no actual notice of defendants' mortgage, he nevertheless had constructive notice at the time he took and filed his original mortgage, and not having thereafter extended additional credit or altered his position to his detriment he is not a " 'subsequent encumbrancer in good faith,'" against whom defendants' mortgage would cease to be valid, although not renewed. The lien of defendants' mortgage upon the drill and fanning mill therefore continued as a lien prior to that of plaintiff's mortgage and remained such in March, 1938.

Defendants' original mortgage on the tractor was filed on September 15, 1927, that upon the plow on April 7, 1928, and that upon the harrow on June 1, 1929. These mortgages are therefore subject to the provisions of chapter 175, supra. Unless they were renewed in the manner therein provided, they ceased to be valid as against "subsequent encumbrancers in good faith" at the expiration of three years from the date of original filing and void as to all persons at the expiration of six years. No attempt to renew the original mortgages upon the plow and the harrow by affidavit, in accordance with the statutory requirements was ever made. An affidavit purporting to renew the original mortgage on the tractor was filed on October 9, 1930, or some twenty days subsequent to the expiration of three years from the date of original filing. Chapter 175, supra, requires the affidavit to be filed "within ninety days next preceding the expiration" of the three-year period.

We are of the opinion that the statutory provisions fixing the time within which a chattel mortgage must be renewed must be strictly complied with and that defendants' attempted renewal after time was without effect. This appears to be in accord with the generally recognized rule. 14 C. J. S. 780; 5 R. C. L. 418, and cases cited.

Since defendants did not renew their mortgages upon the tractor, the plow and the harrow in accordance with the provisions of chapter 175, supra, the mortgages became void as to all persons six years from the date of the original filing or on September 15, 1933, April 7, 1934,

and June 1, 1935, respectively. Upon such dates the lien of plaintiff's mortgage upon said several items of property became a first lien and remained such in March 1938. To recapitulate: on March 1, 1938, defendants' mortgages were a first lien upon the fanning mill and the drill and plaintiff's mortgage was a first lien upon the tractor, the plow and the harrow, and a second lien on the fanning mill and the drill.

What happened thereafter is simply a case of secured creditors attempting to improve their position by acquiring bills of sale to the property described in their respective mortgages. The defendants' bill of sale was first in point of time, both as to execution and delivery. It described the property specifically. Plaintiff's bill of sale was the first to be filed. In plaintiff's bill of sale the description is "All my farming machinery." The statutory effect of the filing of a bill of sale is set forth in § 5960a2, Supplement to Compiled Laws of North Dakota, 1913. It reads: "The filing of such instrument (bill of sale) shall operate as notice thereof to all subsequent purchasers and encumbrancers of so much of said property as is at the time of such filing situated in the county wherein such instrument is filed, and the filing of such instrument shall be deemed equivalent to an immediate delivery, followed by an actual and continued change of possession of the property covered by such instrument."

Thus, under the statute, when the defendants took actual possession of the property on March 12, the plaintiff, by filing his bill of sale on March 11 had already assumed constructive possession thereof, at least in so far as the two bills of sale may be construed to describe the same property. It was assumed by the parties at the trial of this action that plaintiff is a purchaser in good faith and for value of the property described in his bill of sale. Defendants' only attack upon that instrument is that it is not, and cannot be construed as, a conveyance of the property described in their bill of sale. The contention is that the general description "All my farming machinery" cannot include any farming machinery which had been conveyed by specific description in a prior bill of sale. To determine the question thus presented we must seek the intention of the parties. N. D. Comp. Laws 1913, § 5896. This intention may be gathered by reference to the circumstances under which the contract was made and the matter to which

it relates. N. D. Comp. Laws 1913, § 5907. The fact that Wilhelm Stark conveyed certain farming machinery by particular description in one bill of sale and ten days later conveyed all his farming machinery by a second bill of sale is a circumstance tending to establish that the second conveyance did not include the farming machinery particularly described in the first. It is, however, but one circumstance and it is by no means conclusive upon the question. The intention of the plaintiff is clearly disclosed by the record. He was the owner of a mortgage upon all of Stark's personal property. In that mortgage the property here in suit was described item by item. He testified that he secured the bill of sale in order that he might avoid the trouble and expense of foreclosing his mortgage. It was stipulated that at the time he took and filed his bill of sale, he had no notice of defendants' bill of sale, that at such time all of the property described in defendants' bill of sale was located upon Stark's farm and in Stark's possession and that he knew said property was so located and so held. We are satisfied that plaintiff intended that his bill of sale should include the fanning mill, the drill, the tractor, the plow and the harrow as well as the remainder of Stark's farming machinery and in view of his lack of knowledge of defendants' bill of sale and his knowledge of Stark's possession of all of the machinery he was justified in assuming the description in his bill of sale was sufficient.

There remains, however, the question of Stark's intention. Was there a meeting of the minds? Did Stark intend that the conveyance be as broad as the plaintiff intended and thought it was? Upon this question there is little evidence. The record does not disclose the conversation between the parties at the time of the execution of the instrument. At that time, however, Stark was mortally ill. He died within a few days thereafter. The fair inference from the facts we know is that he took no initiative in the transaction and that his only interest was that of a just debtor, trying to satisfy his creditor by giving him what he asked, before the end he knew was imminent. In view of all the circumstances surrounding the transaction, we are convinced that plaintiff's bill of sale was intended as, and was a conveyance of the property in suit. Plaintiff was first to assume possession of the property and adopting the theory upon which this case was tried, to wit; that plaintiff was a purchaser without notice and for value,

we hold that plaintiff's bill of sale of the fanning mill, the drill, the tractor, the plow and the harrow is valid as against the defendants' bill of sale to the same property. § 6002a25, Supplement to Comp. Laws of North Dakota, 1913; Williston, Sales, 1924, p. 831.

We have held that at the time of the execution of the bill of sale to the defendants, their mortgage was a first lien upon the fanning mill and the drill. Since the defendants acquired no legal title to any of the property by virtue of their bill of sale, no question of a merger of the lien of their mortgage can arise. That lien continued and plaintiff's title is subject to it.

We conclude therefore that plaintiff, as the owner thereof, is entitled to the possession of the tractor, the plow and the harrow, and that the defendants, as the owners of a paramount mortgage lien thereon, are under their counterclaim, entitled to the possession of the drill and the fanning mill.

The judgment of the district court will be modified to conform to this opinion and when so modified, affirmed. No costs will be allowed in this court.

NUESSLE, Ch. J., and MORRIS, BURR, and CHRISTIANSON, JJ., concur.