10 F.3d 539
 David C. BURK, Willard Burk, Plaintiffs-Appellants,
v.
NANCE PETROLEUM CORPORATION, a foreign corporation, Defendant-Appellee,
v.
U.S. COMPANIES, INC., Baytide Petroleum, Inc., Third Party-Defendants.
 No. 92-2642.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 14, 1993.
Decided Nov. 12, 1993.
 
 Charles LaVern Neff, Williston, ND, argued for plaintiffs-appellants.
 Brian R. Bjella, Bismarck, ND, argued for defendant-appellee.
 Before LOKEN, Circuit Judge, ROSS, Senior Circuit Judge, and MORRIS SHEPPARD ARNOLD, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 This is a diversity case arising out of a complex oil and gas leasing arrangement covering land in McKenzie County, North Dakota. Plaintiffs David and Willard Burk appeal the district court's[1] grant of summary judgment dismissing their contract and fraud claims against defendant Nance Petroleum Corporation. Having concluded that the "net revenue interest" sharing agreement at issue is unambiguous and was correctly construed by the district court, we affirm.
 
 I.
 
 2
 On October 17, 1975, the Burk family leased their mineral interest in "Farm Unit Seven" to R.E. Puckett for oil and gas development (the "Puckett Lease"). Farm Unit Seven is a 131-acre tract located within Section Three of Township 153 North, Range 101 West, in McKenzie County. The lease provided a standard 12.5% royalty to the Burks as lessors and expired after ten years if no oil or gas production or drilling was commenced within that time.
 
 
 3
 In April 1985, with no drilling or production yet undertaken by the Puckett Lease lessee, the Burks "top leased"[2] Farm Unit Seven to Nance for a 17.5% royalty. At about this time, Nance also acquired interests in other nearby properties, including a lease from the Heen family to Farm Unit Eight, another tract in Section Three (the "Heen Lease").
 
 
 4
 Just before the Puckett Lease was to expire, the successor lessee, Basic Earth Science Systems, Inc. ("Basic Earth"), commenced directional drilling[3] from adjacent land. Basic Earth claimed that this drilling prevented the Puckett Lease from expiring because it reached the Farm Unit Seven area before October 17, 1985. Shortly after the October 17 deadline, however, Nance sued Basic Earth claiming that the drilling failed to extend the Puckett Lease and seeking a declaration of its rights under the top lease. The Burks joined with Nance in this lawsuit, no doubt hoping to capture the higher royalty due them under the top lease.
 
 
 5
 On June 1, 1986, Basic Earth and Nance agreed to settle this and other disputes. As part of their complex arrangement, the developers agreed that the Puckett Lease would remain in force, and that Basic Earth would transfer to Nance its "Deep Well Rights" in 32 acres of Farm Unit Seven in exchange for Nance transferring its "Shallow Rights" in 30 acres of Farm Unit Eight to Basic Earth. This settlement required consent of the Burks because they were Nance's co-plaintiffs in the suit against Basic Earth and the lessors under the Puckett Lease. Nance therefore urged the Burks to join in dismissing the Basic Earth lawsuit and in acknowledging the continued validity of the Puckett Lease.
 
 
 6
 The Burks resisted, demanding compensation from Nance for relinquishing the higher royalty they would have received under the top lease of Farm Unit Seven. To bring the Burks on board, Nance offered to share with them its net revenue interest in any deep well production. The Burks agreed, and the agreement was reduced to writing in a July 24, 1986, "Agreement Regarding Net Revenue Interest" (the "NRI Agreement") that is the subject of this lawsuit.
 
 
 7
 Some understanding of oil and gas development practices is needed to frame the parties' dispute in this case. Under North Dakota law, the Industrial Commission establishes drilling or spacing units to prevent the drilling of unnecessary wells and ensure the efficient and economical development of each pool of oil. See N.D.Cent.Code Sec. 38-08-07. A drilling unit is intended to accommodate a single well, unless an additional well is specifically authorized by the Commission. See N.D.Cent.Code Sec. 38-08-07(3), (4). When two or more separately owned tracts fall within a single drilling unit, their owners may pool their interests and share proportionally in the well's production. See N.D.Cent.Code Sec. 38-08-08; Whelan v. Manziel, 314 S.W.2d 126, 133-34 (Tex.Civ.App.1958). The Puckett Lease, for example, contained standard provisions allowing the lessee to pool this tract with others, in which case the lessor and the lessee would share in the pool's revenues on a surface acreage basis.
 
 
 8
 After the settlement, Basic Earth drilled a productive deep well in a drilling unit consisting of the entire South 1/2 ("S/2") of Section 3, an area which included, among other tracts, portions of Farm Units Seven and Eight. Nance's interest in any deep well in the S/2 thus derived from two sources, the 32 acres of Farm Unit Seven it acquired from Basic Earth in the settlement, and the interest in Farm Unit Eight Nance previously acquired through the Heen Lease. Pursuant to a "Farmout Agreement" between Nance and Basic Earth, Nance conveyed its entire interest in the S/2 to Basic Earth in exchange for a royalty convertible to a "30 percent working interest at payout."
 
 
 9
 The parties agree that the NRI Agreement entitles the Burks to some portion of Nance's "30 percent working interest" in this deep well's revenues. They disagree as to what portion. Two paragraphs of the NRI Agreement are the basis of the dispute. The Burks contend that the NRI Agreement grants them one-sixth of Nance's entire interest in the well's net revenues, that is, the interest Nance derived from Farm Unit Eight as well as Farm Unit Seven. The Burks rely on numbered paragraph 1 of the NRI Agreement:
 
 
 10
 1.) Nance shall, upon receipt of appropriate assignments, assign to Burk an interest equal to one-sixth ( 1/6th) of the net revenue interest received by Nance in any well drilled which has as its drilling unit the S/2 of Section 3, Township 153 North, Range 101 West....
 
 
 11
 On the other hand, Nance contends that the NRI Agreement limits the Burks to one-sixth of the portion of Nance's 30 percent working interest that is derived from its interest in Farm Unit Seven alone, the interest Nance acquired in the settlement. Nance relies on a portion of the introductory paragraph of the NRI Agreement:
 
 
 12
 This Agreement refers only to interests owned and interests entitled to by virtue of that certain Oil and Gas Lease dated the 17th day of October, 1975, by and between Walter O. Burk and Caroline E. Burk and R.E. Puckett.
 
 
 13
 Some time after the deep well began producing, when the Burks learned that Nance intended to pay them one-sixth of the smaller amounts, they commenced this action. Following substantial discovery, the Burks moved for partial summary judgment on their contract claim. Nance moved for summary judgment dismissing both the contract and fraud claims. The district court granted Nance's motion, rejecting the Burks' contract claim on the ground that the opening paragraph of the NRI Agreement unambiguously limits their interest to one-sixth of the income Nance receives by virtue of its interest in the Puckett Lease. The court dismissed the fraud claim without discussion.
 
 
 14
 On appeal, the Burks argue that the district court erred in granting summary judgment on their contract claim because the NRI Agreement is ambiguous, and therefore the court erred in refusing to consider extrinsic evidence of the parties' intent. That extrinsic evidence would show, they claim, that the NRI Agreement's negotiators understood that the Burks would receive one-sixth of Nance's entire net revenue interest in any deep well drilled in the S/2 of Section 3. The Burks further argue that issues of fact preclude summary judgment on their fraud claim. We review the grant of summary judgment de novo. See United States ex rel. Glass v. Medtronic, Inc., 957 F.2d 605, 607 (8th Cir.1992).
 
 II.
 
 15
 At the outset we must determine whether, as the Burks argue, we are required to consider extrinsic evidence in determining whether the NRI Agreement is ambiguous. In support, the Burks cite Sun Oil Co. v. Vickers Ref. Co., 414 F.2d 383 (8th Cir.1969), and St. Clair v. Exeter Exploration Co., 671 F.2d 1091 (8th Cir.1982). Though this may be the majority view, North Dakota law is controlling here. In North Dakota, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible." N.D.Cent.Code Sec. 9-07-04. "Extrinsic evidence is properly considered only if the language of the agreement is ambiguous and the parties' intentions cannot be determined from the writing alone." Miller v. Schwartz, 354 N.W.2d 685, 689 (N.D.1984). Therefore, we must decide whether the NRI Agreement is ambiguous from the four corners of that document.[4]
 
 
 16
 Whether a contract is ambiguous is a question of law for the court. See Minex Resources, Inc. v. Morland, 467 N.W.2d 691, 696 (N.D.1991); Oakes Farming Ass'n v. Martinson Bros., 318 N.W.2d 897, 908 (N.D.1982). Contracts conveying oil and gas interests are subject to the same rules that govern the interpretation of contracts generally. See Holman v. State, 438 N.W.2d 534, 537-38 (N.D.1989). A contract is ambiguous "when rational arguments can be made in support of contrary positions as to the meaning of the language in question." Johnson v. Mineral Estate, Inc., 343 N.W.2d 778, 780 (N.D.1984). The Burks argue that the NRI Agreement is ambiguous in two respects.
 
 
 17
 1. First, the Burks contend there is an inherent ambiguity in the phrase in the introductory paragraph that the district court considered unambiguous--"interests owned and interests entitled to by virtue of" the Puckett Lease. According to the Burks, "interests entitled to" refers to the interests they were to receive as a result of the settlement of the Basic Earth litigation. Therefore, they are entitled not only to one-sixth of the revenues Nance would receive by reason of the Puckett Lease, but also to whatever additional "interests" they negotiated in settling the suit against Basic Earth.
 
 
 18
 Read in light of the NRI Agreement as a whole, we conclude that this interpretation is plainly unreasonable. The phrase "interests owned and interests entitled to" unambiguously refers to the interests the Burks and Nance would have after the settlement validated and extended the term of the Puckett Lease. Any sharing of these Puckett Lease interests was necessarily contingent in an agreement between two parties then litigating to terminate those very interests. Moreover, Nance at that time had no interest in the Puckett Lease, and would only acquire such an interest (the deep well lease rights in Farm Unit Seven) if its agreement with Basic Earth was implemented. Finally, the term "interests entitled to" reflected the fact that no deep drilling had yet occurred and thus any revenue to be shared from these interests was indeed contingent. Therefore, we agree with the district court that the plain meaning of this paragraph is that "net revenues covered [by the NRI Agreement] are those generated by interests owned or entitled to by virtue of the Puckett lease."
 
 
 19
 2. The Burks also argue that operative Paragraph 1 of the NRI Agreement conflicts with the introductory paragraph as construed by the district court, making the contract ambiguous as a matter of law. In Paragraph 1, Nance assigned to the Burks "one-sixth ( 1/6th) of the net revenue interest received by Nance in any well drilled which has as its drilling unit the S/2 of Section 3." Since Nance has an interest in the S/2 of Section 3 by reason of the Heen Lease as well as the Puckett Lease, the Burks argue that the phrase, "which has as its drilling unit the S/2 of Section 3," explicitly refers to both interests, not merely to the interest Nance is "entitled to by virtue of the Puckett Lease."
 
 
 20
 We agree that the presence of conflicting provisions is apt to render a contract ambiguous. See Oakes, 318 N.W.2d at 908-09. There is, however, a far more rational interpretation of Paragraph 1 than that suggested by the Burks. Recall that a "drilling unit" under North Dakota law is the area in which a single well may be drilled. Recall, too, that a drilling unit frequently includes many tracts of land whose owners may pool their interests to share in the single well's production. And, finally, recall that no deep drilling had been done when the NRI Agreement was signed, and the parties did not know where a deep well might be drilled. In these circumstances, the phrase "which has as its drilling unit the S/2 of Section 3" concerns the location of the well to which the NRI Agreement's revenue sharing provision will apply, rather than the interest to which the revenue sharing formula will apply. So construed, the phrase serves two purposes--it clarifies that the NRI Agreement will apply to a well drilled on land in the S/2 of Section 3 not covered by the Puckett Lease (or the Heen Lease, for that matter); and it clarifies that the NRI Agreement will not apply to a well drilled on Puckett Lease land that is outside the S/2 of Section 3.
 
 
 21
 Read in this fashion, the two provisions are complementary. Paragraph 1 establishes that the revenue sharing applies to any deep well whose drilling unit is the S/2 of Section 3. The introductory paragraph defines the scope of Nance's interest that will be shared--any interest to which Nance is entitled "by virtue of" the Puckett Lease. And Paragraph 1 defines the Burks' share--one-sixth of Nance's net revenue interest. While this would not be the only plausible construction of Paragraph 1 if it stood alone, a contract is to be interpreted as a whole to give effect to every part, with each clause helping to interpret the others. See N.D.Cent.Code Sec. 9-07-06; see also Woods v. Sims, 273 S.W.2d 617, 620-21 (Tex.1955) (court should attempt to harmonize provisions in an oil and gas lease even if they "appear to be contradictory and inconsistent with each other").
 
 
 22
 Here, the contract's opening paragraph must be read to govern the agreement as a whole. The opening paragraph defines the scope of the NRI Agreement. The opening paragraph also contains the more specific description of the property interests to which the NRI Agreement applies. See Oakes, 318 N.W.2d at 908 ("if a conflict exists between a specific provision and a general provision in a contract, the specific provision qualifies the general provision"); N.D.Cent.Code Sec. 31-11-05(25). Because the NRI Agreement's introductory paragraph is unambiguous, and the most logical construction of Paragraph 1 is consistent with the plain meaning of that earlier paragraph, the contract as a whole is unambiguous. The district court therefore properly granted summary judgment dismissing the Burks' contract claim.
 
 
 23
 That leaves the question of the Burks' fraud claim. Nance's motion for summary judgment specifically addressed this claim, yet the Burks made no mention of it in their response to Nance's motion. Thus, there is a serious question whether the issue was preserved for appeal. In any event, the district court committed no error. The purported fraud consists of an alleged failure to disclose certain information during negotiations that led to a written contract. The Burks and their attorney had ample opportunity to review the NRI Agreement before signing it. They do not allege that Nance refused to answer their inquiries or made any affirmative misstatements. Thus, the facts viewed most favorably to the Burks fail to support their claim of fraud. See David v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 440 N.W.2d 269, 271 (N.D.1989); Froholm v. Cox, 934 F.2d 959, 961 (8th Cir.1991) (applying North Dakota law).
 
 
 24
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The HONORABLE PATRICK A. CONMY, Judge of the United States District Court for the District of North Dakota
 
 
 [2]
 A top lease is a lease granted before the expiration of an existing lease that becomes effective when the existing lease expires. See Howard R. Williams and Charles J. Meyers, Manual of Oil and Gas Terms 1285 (8th ed. 1991)
 
 
 [3]
 Directional drilling is the "drilling of a well that departs materially from the vertical." Williams and Meyers, supra note 2, at 320
 
 
 [4]
 To the extent our earlier opinion in St. Clair is to the contrary, see 671 F.2d at 1095-96, we must follow the subsequent decision of the North Dakota Supreme Court in Miller