2008 ND 165

**Karen DOEDEN d/b/a High Impact Sign Company, a/k/a A High Impact Sign, Plaintiff and Appellant,**

v.

**Curtis STUBSTAD, Defendant and Appellee.**

**No. 20070322.**

Supreme Court of North Dakota.

Sept. 4, 2008.

Rehearing Denied Nov. 10, 2008.

860

Jonathan T. Garaas, Garaas Law Firm, Fargo, N.D., for plaintiff and appellant.

Mark R. Hanson, Nilles, Ilvedson, Plambeck & Selbo, Ltd., Fargo, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1]  Karen Doeden, doing business as High Impact Sign Company or A High Impact Sign, appeals from a judgment dismissing her action against Curtis Stubstad for conversion of property that she claimed belonged to her.  We hold the district

court's findings that Doeden did not own the disputed property because she had not been given the property and that Stubstad did not convert the property are not clearly erroneous. We affirm.

I

[¶ 2] Stanley Knecht owned and operated an unincorporated portable sign rental business, High Impact Sign Company, which generally consisted of about 30 portable advertising signs and letters for the signs that Knecht rented to various business entities for placement near the entities' business. Knecht employed his stepsons, Paul Fox and Kelly Fox, and Paul Fox's girlfriend, Doeden, to help Knecht with the sign rental business.

[¶ 3] According to Doeden, Knecht decided to quit the sign rental business in 2004 and transfer the business to his stepsons. Doeden claimed Knecht offered the sign rental business to Kelly Fox, then to Paul Fox, and finally to her because of her better credit rating. Doeden claimed she took possession of most of the business's personal property before October 1, 2004, including several portable signs and letters, through a verbal gift from Knecht that was later evidenced by a document that was notarized as signed by Knecht on September 17, 2004, in which he "HEREBY TRANSFER[ED] OWNERSHIP OF HIGH IMPACT SIGN COMPANY TO KAREN DOEDON [sic] DATED THIS FRIST [sic] DAY OF OCTOMBER [sic] 2004." According to Doeden, she relocated the business's assets to her storage facility in Fargo in August and September 2004, and she used a Moorhead, Minnesota, address to begin doing business as "A High Impact Sign," which was evidenced by her request for a reservation of that name filed with the Minnesota secretary of state on September 21, 2004.

[¶ 4] According to Knecht, he advised Paul Fox that Fox could use some of the signs and letters to rent to customers, or Knecht was going to sell the signs or otherwise dispose of them. According to Knecht, he did not give any portable signs and letters to Paul Fox or Doeden; rather, he decided to quit the sign rental business and he let Paul Fox and Doeden rent signs and letters to some customers and keep the income from those rentals, provided they properly serviced their rentals and rented the signs "right." Knecht testified that, during that time, Paul Fox and Doeden were not obligated to rent any signs, and if Knecht rented any signs, he kept the income from those rentals. Knecht claimed he executed the transfer document on September 17, 2004, so Doeden could open a checking account, and Knecht testified that document did not transfer ownership of the signs and letters to Doeden. According to Knecht, he had several discussions with Stubstad in 2004 about selling the signs and letters to Stubstad. Stubstad testified he was interested in purchasing the signs for Spectrum Instant Signs, a business owned by Deb Barnett.

[¶ 5] Knecht testified he received complaints from some customers renting signs from Doeden and Paul Fox, and on the morning of November 24, 2004, he went to Doeden's storage facility to advise them that they were no longer entitled to rent the signs and to take possession of the signs and letters because they had failed to properly rent the signs. Later that day, Knecht and Stubstad returned to Doeden's storage facility, and they removed some signs and letters from the premises and those signs were delivered to Spectrum Instant Signs. Knecht signed an agreement, dated December 1, 2004, in which he transferred all mobile signs formerly known as High Impact Signs to Stubstad.

[¶ 6] Doeden sued Stubstad, alleging she had received ownership of the business from Knecht before October 1, 2004, and she took possession of the personal property of the business, including the signs and letters. Doeden alleged that on November 24, 2004, Stubstad, and others acting under his direction, removed four portable advertising signs and various sets of letters for the signs from Doeden's storage facility; that five additional signs belonging to Doeden were taken from various business locations in the Fargo–Moorhead area and were subsequently located at other businesses in the area, purporting to be placed by Spectrum Instant Signs; and that Doeden demanded Stubstad return her property, but he refused, claiming an ownership interest in the property under a buy and sell arrangement with Knecht. Doeden sought return of the signs and letters or damages for their replacement value and an accounting for income received by Stubstad for the use of her property.

[¶ 7] After a bench trial, the district court found Doeden was not the owner of the signs and letters because her only right to the signs and letters was to rent them to customers. The court found Knecht did not give the portable signs and letters to Paul Fox or Doeden; rather, Knecht allowed Fox and Doeden to use the signs and keep the income from sign rentals if they rented the signs. The court decided the transfer document signed by Knecht on September 17, 2004, was not ambiguous and merely allowed Doeden to use the name of Knecht's business without transferring ownership of any signs or letters to Doeden. The court decided even if the written transfer document was ambiguous, extrinsic evidence established the document was not intended to give Doeden an ownership interest in the signs and letters. The court alternatively decided even if there was some type of agreement for Knecht to transfer ownership of the signs and letters to Doeden, the agreement was subject to a condition precedent that Doeden "rent [the signs] right" and she had failed to properly rent the signs. The court dismissed Doeden's claim for conversion.

II

[¶ 8] Doeden argues the district court erred in deciding Stubstad did not convert her property, because she was the owner of the portable advertising signs and letters as a result of an oral gift from Knecht under N.D.C.C. chs. 47–09 and 47–11 and the rationale of *Lenihan v. Meyer*, 111 N.W.2d 696 (N.D.1961), and because no writing was necessary to effectuate the gift. She contends she received title to the property upon Knecht's delivery and her acceptance and Knecht could not revoke the gift. She claims the written transfer document removed any question about an oral gift of the property to her. She also asserts the district court's reliance on parol evidence to establish a condition precedent was erroneous, because the transfer document unambiguously transferred the signs and letters to her. She argues the court erred in dismissing her claim for conversion

[¶ 9] In *Buri v. Ramsey*, 2005 ND 65, ¶¶ 13–14, 693 N.W.2d 619 (citations omitted), we outlined several relevant criteria for the analysis of a conversion claim:

"We have held the trial court's determination about whether a conversion has been committed is a finding of fact which will not be overturned on appeal unless it is clearly erroneous.". . . .

Our Court has held that "[c]onversion consists of a tortious detention or destruction of personal property, or a wrongful exercise of dominion or control over the property inconsistent with or in defiance of the rights of the owner."

"The gist of a conversion is not in acquiring the complainant's property, but in wrongfully depriving him of it, whether temporarily or permanently, and it is of little relevance that the converter received no benefit from such deprivation." Conversion does not require bad intent on the part of the converter, but only an intent to control or interfere with an owner's rights to use to an actionable degree.

[¶ 10] The issue in this case is whether Doeden was the owner of the disputed signs and letters under an oral gift that was later evidenced by the written transfer document and implicates principles of property and contract law.

[¶ 11] Under N.D.C.C. § 47–09–01, a transfer of property occurs when a party's actions result in a conveyance from one living person to another. A voluntary transfer constitutes an executed contract, subject to all rules of law concerning contracts except that consideration is not necessary for the transfer to be valid. N.D.C.C. § 47–09–03. A transfer may be made without a writing in any case when a writing is not expressly required by statute. N.D.C.C. § 47–09–04. *See* N.D.C.C. § 9–06–04 (listing contracts subject to requirement of writing). A transfer in writing is called a grant, a conveyance, or a bill of sale. N.D.C.C. § 47–09–05. A transfer vests in the transferee all the transferor's title and incidents to the property unless a different intention is expressed or is necessarily implied. N.D.C.C. § 47–09–16.

[¶ 12] A gift is a voluntary transfer of personal property made without consideration. N.D.C.C. § 47–11–06. A gift cannot be revoked by the giver. N.D.C.C. § 47–11–08. Under N.D.C.C. § 47–11–07, an oral gift is not valid unless the means of obtaining possession and control of the property are given, and if the property is capable of delivery, there is actual or symbolical delivery of the property to the donee. We have said a valid gift requires an intention by the donor to give property to the donee, coupled with an actual or constructive delivery of the property to the donee and acceptance of the property by the donee. *Makedonsky v. North Dakota Dep't of Human Servs.,* 2008 ND 49, ¶ 11, 746 N.W.2d 185; *Bellon v. Bellon,* 244 N.W.2d 227, 228 (N.D.1976); *In re Paulson's Estate,* 219 N.W.2d 132, 134 (N.D.1974); *In re Kaspari's Estate,* 71 N.W.2d 558, 567 (N.D.1955); *Zeman v. Mikolasek,* 75 N.D. 41, 53, 25 N.W.2d 272, 279 (1946). Under a gift analysis, the donor's intent is a question of fact. *See Makedonsky,* at ¶¶ 11–14; *Bellon,* at 228–29.

[¶ 13] Our law also defines a "loan for use" as a "contract by which a lender gives to a borrower the temporary possession and use of personal property and the borrower agrees to return the identical personal property to the lender at a future time without reward for its use." N.D.C.C. § 47–12–01. A "loan for use" does not transfer title to personal property. N.D.C.C. § 47–12–05.

[¶ 14] Written contracts are construed to give effect to the parties' mutual intention when the contract was formed, and if possible, we look to the writing alone to determine the parties' intent. *Fargo Foods, Inc. v. Bernabucci,* 1999 ND 120, ¶ 13, 596 N.W.2d 38. The interpretation of a written contract is a question of law, if the parties' intent can be determined from the language of the writing alone. *VND, LLC v. Leevers Foods, Inc.,* 2003 ND 198, ¶ 34, 672 N.W.2d 445. Whether a written contact is ambiguous is a question of law, which we review independently. *Spagnolia v. Monasky,* 2003 ND 65, ¶ 10, 660 N.W.2d 223. A written contract is ambiguous if rational arguments can be made for different interpre-

tations. *Id.* If a written contract is ambiguous, extrinsic evidence may be considered to determine the parties' intent, and the terms of the contract and the parties' intent are questions of fact. *Id.* If a written contract is unambiguous, however, extrinsic evidence is not admissible to contradict the written language. *VND,* at ¶ 34.

[¶ 15] In *Lenihan,* 111 N.W.2d at 696–99, this Court considered an issue about the elements of a claimed completed gift in the context of a written document purporting to transfer "all [the husband's] personal property, whatever it may be" to his wife. This Court analyzed the purported transfer under a statute for gifts, N.D.C.C. § 47–11–06; under statutes for voluntary written transfers without consideration by a grant, a conveyance, or a bill of sale, N.D.C.C. §§ 47–09–03; 47–09–05 and 47–09–16; and under statutes for interpreting contracts, N.D.C.C. §§ 9–07–02, 9–07–03; 9–07–04, and 9–07–12. *Lenihan,* at 698. We explained that the determination of the property transferred by the general property description in the written document required an examination of the parties' intent, which could be ascertained by the circumstances under which the document was executed. *Lenihan,* at 698 (citing *Royal v. Aubol,* 69 N.D. 419, 287 N.W. 603 (1939)). In *Lenihan,* at 698, we construed the written document under the circumstances of that case to include all the personal property owned by the husband on the date he delivered the document to his wife, and we concluded the evidence established all the elements of a completed gift inter vivos. *Id.* at 698.

[¶ 16] Here, the parties have not argued that Knecht's claimed gift was expressly required to be in writing. *See* N.D.C.C. §§ 9–06–04; 47–09–04. The district court initially found Knecht did not give any signs and letters to Doeden or to Paul Fox; rather, Knecht allowed Fox and Doeden to use the signs and letters, and if they did so, they could keep the income from the sign rentals. The court also analyzed the transfer document, which said Knecht "HEREBY TRANSFER[ED] OWNERSHIP OF HIGH IMPACT SIGN COMPANY TO KAREN DOEDON [sic] DATED THIS FRIST [sic] DAY OF OCTOMBER [sic] 2004." The court decided the transfer document was not ambiguous and did not transfer the signs or the letters to Doeden but merely allowed her to use the business's name. The court alternatively concluded if the transfer document was ambiguous, extrinsic evidence admitted at trial established the intent of the document was not to provide Doeden with an ownership interest in Knecht's signs and letters. The court also said the parties' conduct after the effective date of the transfer document indicated the document was not intended to transfer an ownership interest in the signs and letters to Doeden, because Knecht continued to rent signs that Doeden claimed were transferred to her. The court found Knecht's testimony, in which he repeatedly explained his intent was that Paul Fox and Doeden could only use the signs and letters, was compelling and consistent with the parties' actions after the document was signed on September 17, 2004. The court said the purpose of the transfer document was to permit Doeden to open a checking account and found the parties did not intend for the document to transfer ownership of the signs and letters to Doeden.

■ [¶ 17] The law attaches consequences to unambiguous written documents regardless of the parties' secret intent. *See Estate of Duemeland,* 528 N.W.2d 369, 371 (N.D.1995) (quoting *State ex rel. Sathre v. Moodie,* 65 N.D. 340, 358, 258 N.W. 558, 566 (1935)). Here, the document at issue "TRANSFER[ED] OWNERSHIP OF HIGH IMPACT SIGN

COMPANY" to Doeden. Our law defines "ownership" of property to mean "the right of one or more persons to possess and use it to the exclusion of others." N.D.C.C. § 47–01–01. Under N.D.C.C. § 47–01–08, there may be ownership of all inanimate things capable of manual delivery, all obligations, the goodwill of a business, trademarks, signs, and rights created or granted by statute. The owner of property owns all its products and accessions. N.D.C.C. § 47–01–20. Ownership of property may be absolute or qualified. N.D.C.C. §§ 47–02–01 through 47–02–03. Ownership also may be conditional. N.D.C.C. §§ 47–02–22 and 47–02–23. The goodwill of a business may be transferred, N.D.C.C. §§ 47–07–10 through 47–07–12, and in the absence of any expression to the contrary, the sale of a business is presumed to pass the goodwill of the business. *Engstrom v. Larson,* 77 N.D. 541, 562, 44 N.W.2d 97, 108 (1950).

[¶ 18] The language of the transfer document could be construed to convey to Doeden everything associated with High Impact Sign Company; however, that general language does not explicitly address the assets or obligations of the business, and we believe that language is not clear and also could be construed to mean the transfer of less than everything associated with the business. The language at issue in this case is not as specific as the written description in *Lenihan* of "all my personal property, whatever it may be," which this Court nevertheless said required consideration of all the circumstances under which the written document was executed and delivered. 111 N.W.2d at 697–98. *See also Royal,* 69 N.D. at 426–28, 287 N.W. at 607–08 (stating written description of "[a]ll my farming machinery" required consideration of circumstances under which written document executed). *Cf. Engstrom,* 77 N.D. at 561–62, 44 N.W.2d at 108 (in action for accounting for amount due from sale of partnership's cafe, bill of sale specifically covered all restaurant and kitchen furniture, fixtures and equipment "including all dishes, cooking utensils, tools, counters, shelves, show-cases, stools, cash registers, stoves, refrigerators, freezing equipment, dish-washing machine, water heater, steam-tables, and each and every other thing used in and about the operation of said cafe," and the sale of the business presumed to pass goodwill of business with other assets). We conclude rational arguments can be made for different interpretations of the scope of the language to "transfer ownership of High Impact Sign Company" to Doeden, and we agree with the district court's ultimate conclusion that the transfer document is ambiguous. We therefore conclude the court did not err in considering extrinsic evidence to decide the parties' intent, which the court decided adversely to Doeden.

[¶ 19] Under both the interpretation of an ambiguous contract and a gift analysis, the determination of intent is a question of fact. *See Makedonsky,* 2008 ND 49, ¶¶ 11–14, 746 N.W.2d 185 (gift); *Spagnolia,* 2003 ND 65, ¶ 10, 660 N.W.2d 223 (contract); *Bellon,* 244 N.W.2d at 228–29 (gift). A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support the finding, or if, on the entire record, we are left with a definite and firm conviction the court made a mistake. *Edward H. Schwartz Constr., Inc. v. Driessen,* 2006 ND 15, ¶ 6, 709 N.W.2d 733. A district court's choice between two permissible views of the weight of the evidence is not clearly erroneous, and simply because we may have viewed the evidence differently does not entitle us to reverse the court's findings of fact. *Id.*

[¶ 20] Although Doeden claims the district court erred in accepting "the singular, self-serving, and contradictory

testimony of Knecht," we do not reweigh the evidence and we give due regard to the court's opportunity to judge the witnesses' credibility. *Edward H. Schwartz Constr.*, 2006 ND 15, ¶ 6, 709 N.W.2d 733. There is evidence in this record to support the court's findings that Knecht did not give the signs and letters to Doeden and that the extrinsic evidence established the transfer document was not intended to give Doeden an ownership interest in the signs and letters. We are not left with a definite and firm conviction the court made a mistake in finding Knecht did not give the property to Doeden and the transfer document was not intended to transfer Knecht's interest in the signs and letters to Doeden. We conclude those findings are not clearly erroneous, and under those findings, Doeden did not have an ownership interest in the disputed property. We therefore conclude the court did not clearly err in finding Stubstad did not convert Doeden's property

### III

[¶ 21] Because of our resolution of the conversion issue, it is not necessary to address Doeden's argument about damages or attorney fees.

### IV

[¶ 22] We affirm the district court judgment.

[¶ 23] GERALD W. VANDE WALLE, C.J., BRUCE BOHLMAN, S.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

[¶ 24] The Honorable BRUCE E. BOHLMAN, S.J., sitting in place of the Honorable DANIEL J. CROTHERS, J., disqualified.