# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3902

_____

| | | |
|---|---|---|
| Randall J. Bakke, P.C., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of North Dakota. |
| Murex Petroleum Corporation, | * | |
| | * | [UNPUBLISHED] |
| Appellee. | * | |

_____

Submitted: May 11, 2009
Filed:  August 24, 2009

_____

Before LOKEN, Chief Judge, BYE, Circuit Judge, and MILLER, District Judge.[1]

_____

MILLER, District Judge.

Appellant Randall J. Bakke, P.C. was assigned a royalty interest in the oil and gas leases of certain property in Bottineau County, North Dakota. The owner of the property then sold it to appellee Murex Petroleum Corporation, which refused to recognize Bakke's royalty interest. Bakke sued Murex for breach of contract, bad faith, unjust enrichment and tortious interference with a contract. Both parties moved

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas, sitting by designation.

for summary judgment and the district court[2] denied Bakke's motion and granted Murex's motion. Bakke appeals the district court's order dismissing his claims. We affirm.

I.

Randall J. Bakke, P.C. performed legal services for B&B Oilfield Services, Inc. To compensate Bakke for those services, B&B assigned Bakke a 2.5% royalty interest in the oil, gas, casing head gas, and other hydrocarbons produced, saved and sold by B&B, its successors and assigns from three tracts of land known as Ralph Smith #1, Ralph Smith #2, and Tootle #1. The assignment was made on December 1, 2003, in a document entitled Assignment of Overriding Royalty Agreement. When it was discovered that B&B did not own 100% of the overriding interest in Smith #1 and Tootle #1, a second Assignment of Overriding Royalty Agreement was executed and recorded, assigning Bakke additional overriding interests.

In April 2007, B&B sold to appellee Murex Petroleum Corporation the wells in which Bakke had a royalty interest. The Bill of Sale was executed on June 7, 2007, although it had an effective date of April 1, 2007. The Bill of Sale provided, in relevant part, that Murex acquired the following:

[A]ll of [B&B's] right, title, interest and estate in and to the property and rights incident or appurtenant to the foregoing (collectively, the "Property") including, but not limited to, the following:

(a) Fee surface estates, operating rights, production payments, rights of assignment and reassignment, and all other interest in the Wells and Lands;

---

[2]The Honorable Karen K. Klein, United States Magistrate Judge for the District of North Dakota.

. . .

    (c)      Contracts and agreements (the "Contracts") that benefit or burden the Lands, Wells, . . . rights-of-way, easements, surface agreements, assignments, . . . excluding, however, any Contracts which, by their terms, are not transferable.

. . .

    (e)      Oil, gas, casinghead gas, condensate, distillate, liquid hydrocarbons, gaseous hydrocarbons, products refined and manufactured therefrom, other minerals and the accounts and proceeds from the sale of all of the foregoing (collectively, the "Production") to the extent such Production is produced from the Lands and Wells, after the Effective Time[.]

The same day that it executed the Bill of Sale, B&B executed a Release of Oil and Gas Leases, in which B&B released, remised, and relinquished all of its rights and title to the oil and gas leases pertaining to the Bottineau County properties, which includes the properties in which Bakke had a royalty interest.

Bakke filed suit alleging breach of contract, bad faith, unjust enrichment and tortious interference with a contract when Murex refused to recognize the royalty interest that B&B assigned to Bakke. When the parties filed cross-motions for summary judgment, the district court denied Bakke's motion and granted Murex's motion, finding that: (1) Bakke held no royalty interest under Murex's leases, (2) B&B had released its leasehold interest, thereby extinguishing Bakke's interest, and (3) Bakke was not a successor or assign of the B&B leases. This is an appeal from that decision.

II.

We review a district court's grant of summary judgment de novo and apply the same standard as the district court. Mehrkens v. Blank, 556 F.3d 865, *868 (8th Cir. 2009). Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the

movant is entitled to judgment as a matter of law.  J.E. Jones Constr. Co. v. Chubb & Sons, Inc., 484 F.3d 337, *340 (8th Cir. 2007).

In North Dakota, contracts conveying oil and gas interests are subject to the same rules that govern the interpretation of contracts generally.  Burk v. Nance Petroleum Corp., 10 F.3d 539, *542 (8th Cir. 1993); Minex Res., Inc. v. Morland, 467 N.W.2d 691, *696 (N.D. 1991).  Section 9-07-02 of the North Dakota Century Code provides that "the language of a contract is to govern its interpretation if the language is clear and explicit and does not involve an absurdity."  See Langer v. Pender, 764 N.W.2d 159, *163 (N.D. Apr. 2009).  The contract is construed so as to give effect to the mutual intention of the parties as it existed at the time of contracting.  N.D.C.C. § 9-07-03; Langer, 764 N.W.2d at *163.  When a contract is reduced to a writing, the intention of the parties is to be ascertained from the writing alone, if possible.  N.D.C.C. § 9-07-04.  The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable.  Langer, 764 N.W.2d at *163.  Each clause is to help interpret the others.  Id.  Under N.D.C.C. § 9-07-07, several contracts relating to the same matter between the same parties and made as part of substantially one transaction must be construed together.  Grynberg v. Dome Petroleum Corp., 599 N.W.2d 261, *265 (N.D. 1999); Nantt v. Puckett Energy Co., 382 N.W.2d 655, *658 (N.D. 1986).  Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning by the parties.  Grynberg, 599 N.W.2d at *265.

The interpretation of a written contract is a question of law if the parties' intent can be determined from the language of the writing alone.  Doeden v. Stubstad, 755 N.W.2d 859, *864 (N.D. 2008); Grynberg, 599 N.W.2d at *265.  Extrinsic evidence is properly considered only if the language of the agreement is ambiguous and the parties' intentions cannot be determined from the writing alone.  Burk, 10 F.3d at *542.  Whether a contract is ambiguous is a question of law for the court.  Id.; Doeden, 755 N.W.2d at *864.  A contract is ambiguous when rational arguments can

be made in support of contrary positions as to the meaning of the language in question. Burk, 10 F.3d at *542; Doeden, 755 N.W.2d at *864.

III.

A.

Bakke first argues that the district court erred when it found that Murex did not acquire B&B's leasehold interest. Bakke specifically asserts that the district court misinterprets the Bill of Sale and argues that the Bill of Sale unambiguously assigned to Murex, B&B's interest in the subject wells and lands including all contracts and agreements that benefit or burden the wells and lands. Thus, according to Bakke, any and all of B&B's leasehold interest were assigned to Murex on April 1, 2007, which is the effective date of transfer contained in the Bill of Sale. In the alternative, Bakke asserts that if the Bill of Sale is ambiguous as to whether the leasehold interest was intended to be transferred, extrinsic evidence establishes that Murex intended to, and did, acquire B&B's leasehold interest.

Murex maintains that B&B executed both the Bill of Sale and Release on the same day, June 7, 2007, and that they must be read together. Further, when the Bill of Sale and Release are read together, they can be read only as releasing B&B's interest in the leases and conveying only the wells and associated personal property.

We affirm on this point because we agree with Murex that the Bill of Sale and Release must be read together because they were executed on the same day by the same parties for the same property. See Grynberg, 599 N.W.2d at *265 (holding that N.D.C.C. § 9-07-07 requires that several contracts relating to the same matter between the same parties and made as part of substantially one transaction must be construed together); Nantt, 382 N.W.2d at *658. Further, when the Bill of Sale is read in conjunction with the Release, it is clear that Murex did not acquire B&B's leaseholds.

Indeed, while the Bill of Sale identifies the location of the wells, it makes no mention of the leaseholds. The Release, however, specifically references each leasehold in which B&B is relinquishing its interest.

## B.

Bakke's second argument on appeal is that the district court erred in finding that the Release extinguished Bakke's overriding royalty interest. In support of this argument, Bakke points out that, although B&B executed the Bill of Sale and the Release on the same date, June 7, 2007, the Bill of Sale specifically provided that the sale was effective April 1, 2007. Bakke asserts that this clearly shows that B&B and Murex intended that B&B's interest in the property would be transferred to Murex before the time that B&B's leasehold interest would be released.

Bakke's second argument begs the question: under North Dakota law, what is the effective date of the Bill of Sale? A transfer in writing is called a grant, a conveyance, or a bill of sale. Doeden, 755 N.W.2d at *864. A transfer vests in the transferee all the transferor's title and incidents to the property unless a different intention is expressed or is necessarily implied. *Id.* "A grant takes effect so as to vest the interest intended to be transferred only upon its delivery by the grantor and is presumed to have been delivered at its date." Dinus v. Dinus, 448 N.W.2d 210, *215 (N.D. 1989)(quoting N.D.C.C. § 47-09-06); Bolyea v. First Presbyterian Church of Wilton, N.D., 196 N.W.2d 149, *159-60 (N.D. 1972). Oil and gas leases transfer an interest in real property that takes effect only upon delivery. Mar Win Dev. Co. v. Wilson, 104 N.W.2d 369, *373 (N.D. 1960).

We disagree with the significance Bakke places on the fact that the Bill of Sale has an April 1, 2007 effective date, while the Release fails to contain language expressing an effective date. As set forth above, the Bill of Sale and Release are to be read together. See Grynberg, 599 N.W.2d at *265; Nantt, 382 N.W.2d at *658.

-6-

When read together, the effective date of the Release is April 1, 2007, the same day as the effective date of the Bill of Sale. Consequently, we affirm on this point.

## C.

The Bill of Sale and Release are not ambiguous. Murex did not acquire B&B's leasehold interest and the Release extinguished Bakke's overriding royalty interest. The district court's decision on this point is therefore affirmed.

Because we are affirming the district court's order as to Bakke's first two arguments on appeal, we will not address Bakke's remaining arguments that (1) the district court erred in concluding that Bakke's overriding royalty interest did not burden Murex's existing leases, and that (2) the district court erred in dismissing Bakke's claims for breach of duty of good faith and fair dealing, breach of contract, unjust enrichment and other equitable relief, and interference with contract.

## IV.

For the reasons provided herein, we affirm the district court's order granting Murex's motion for summary judgment and dismissing Bakke's claims against Murex.

_____