Jimmie R. YOUNG, Plaintiff-Appellant,

v.

DIXIE OIL COMPANY, INC., Defendant-Appellee. (Two cases)

Court of Appeals of Tennessee,
Eastern Section.

Dec. 14, 1982.

Permission to Appeal Denied by
Supreme Court Mar. 14, 1983.

William N. Groover with Taylor & Groover, Knoxville, Walter L. Fuller, Jr., Oak Ridge, for plaintiff-appellant.

Ernest A. Petroff, Huntsville, for defendant-appellee.

MATHERNE, Special Judge.

The plaintiff-lessor sues to void two oil and gas leases and for damages to the leased premises allegedly committed by the defendant-lessee. The chancellor held that the plaintiff-lessor failed to prove his case and dismissed the lawsuits. The plaintiff appeals under the following issues for review:

Plaintiff presents two fundamental, interrelated questions for review: (1) According to the terms of the oil and gas leases under consideration, have the actions of the defendant in drilling certain gas wells and paying certain sums of money been sufficient to keep said leases in effect beyond the primary terms thereof? (2) Has the defendant proceeded quickly and diligently to bring the leased property into production?

One lease was entered into on April 8, 1976, covering 584 acres of land in Morgan and Scott Counties, Tennessee, for a term of one year, which lease is the subject of *Young v. Dixie Oil Company,* Morgan Equity, No. 80–7590. The other lease was entered into on March 10, 1978, covering 50 acres of land in Scott County, Tennessee, adjacent to the other tract, for a term of 45 days, which lease is the subject of *Young v. Dixie Oil Company,* Scott Equity, No. 4866.

The 584-acre lease provides at Paragraph 2 that it shall remain in force for a term of one year from date "and so long thereafter as oil, gas . . . or any of them is produced from said leased premises or operations for drilling are continued as hereinafter provided. . ." At Paragraph 4, the lease provides that:

(t)he lessee shall pay lessor as royalty ⅛ of the proceeds from the sale of gas . . . where gas only is found and where such gas is not sold or used, lessee shall pay or tender annually at the end of each yearly period during which such gas is not sold or used, as royalty, an amount equal to the delay rental provided in paragraph 5 hereof [$1.00 per acre per annum], and while said royalty is so paid or tendered this lease shall be held as producing lease under paragraph 2 hereof. . .

The 50-acre lease provides at paragraph 2 that it shall remain in force for a primary term of 45 days from date "and as long thereafter as operations for oil or gas are being conducted on the premises, or oil or gas is found in paying quantities thereon. . ." At paragraph 3 of the lease, it is provided that the lessee shall

pay lessors ⅛ part of all gas . . . produced or sold from the premises, payable monthly; provided the lessee shall pay lessor a royalty at the rate of Fifty Dollars per year on each gas well while, through lack of market, gas therefrom is not sold or used off the premises, and while said royalty is so paid said well shall be held to be a paying well under paragraph 2 hereof.

The 50-acre lease had inserted therein by pen, at the insistence of the plaintiff-lessor, the following: "shut in gas well holds only acreage committed to each well for a period of five years with no rental."

The proof establishes that prior to this lawsuit three gas wells were drilled on the 584-acre tract, one of which was plugged and the other two are considered to be shut-in wells by the lessee. No gas was produced or sold from these wells. The proof also establishes that the rentals provided for in paragraph 5 of the lease, $1.00 per acre per annum, were paid or tendered by the lessee under the provisions of paragraph 4 heretofore quoted. The proof also establishes that gas pipelines for the transportation of gas from producing wells are not immediately available to the premises covered under each lease.

Prior to this lawsuit the lessee drilled one gas well on the 50-acre tract, which well it considers to be a shut-in gas well. It is also established that the lessee paid the royalties due under paragraph 3 of the lease, even though the written in portion of the lease may have excused payments for a period of five years. There is no proof of the number of acres the parties treated as committed to each shut-in well drilled on the 50-acre tract.

In consideration of the plaintiff-lessor's first issue for review, we hold that, under the terms of the leases, the drilling of the wells and the paying of royalties, absent production of gas, has resulted in keeping the leases in effect beyond the primary terms thereof. See *Waddle v. Lucky Strike Oil Co., Inc.,* (Tenn.1977) 551 S.W.2d 323.

Of course, the leases differ wherein the drilling of wells and the payment of delayed rentals under the 584-acre lease kept the lease alive on the entire tract, but under the 50-acre lease the drilling of the one well and the payment of royalties (whether due or not) kept the lease alive only as to that individual shut-in well and the land committed thereto for a period of five years.

Considering the second issue for review, we find that the lessee commenced drilling Young-Stevenson No. 1 (1373) on April 15, 1977, on the 584-acre tract, which well was capped as a shut-in well. On February 28, 1978, Jimmy Young Well # 1 (1613) was spudded (commenced) on the same tract; which well was plugged and abandoned. On March 29, 1978, Jimmy Young # 2 (1672) was spudded on the 50-acre tract, which well was capped as a shut-in well. On September 2, 1980, Well No. 2966 was spudded on the 584-acre tract, and it was capped as a shut-in gas well. These lawsuits were filed in November 1980.

In *Waddle v. Lucky Strike Oil Co., Inc., supra,* our supreme court quoted with approval from opinions of the Supreme Court of Colorado to the effect that oil and gas leases

> are construed most favorable to development ... time is the essence of the contract, and the real motive for the giving of such instruments is the development of the leased property. Therefore such a lease or option is properly construed strongly against the lessee, so as to secure such speedy development.

The *Waddle* court further found that oil and gas leases, therefore carry implied covenants against the lessee which covenants include: (1) to drill an exploratory well; (2) to drill off-set wells; (3) to drill additional wells during and after the exploratory period; and (4) to diligently operate and market.

We note the unreported Opinion of this court in *Kane v. Ray, et al,* Scott Chancery, filed at Knoxville, wherein the court, upon the authority of *Waddle, supra,* remanded the lawsuit for a determination of whether the lessee had satisfied the implied covenant to use due diligence in producing and marketing gas from the land under the lease in dispute. We also note the unreported Opinion of this court in *Bye, et al. v. Cumberland Oil Producing Company, et al,* filed at Knoxville in April 1982, wherein the court relied upon *Waddle, supra,* on the proposition that the term "producing well" contemplated production in paying quantities, and also embraces the ability to market the product at a profit.

The facts establish that there is a gas transmission line north of the leased premises through which gas could be transported to market. According to the testimony and Exhibit No. 2, the transmission line is about 6500 feet north-northwest of Well No. 1371, which is nearer the pipeline than any other shut-in well. The well fartherest from the transmission line is Well No. 2966, which is about 12,150 feet or about 2.3 miles therefrom.

According to the weight of the evidence, no one of the shut-in wells could be put into profitable production due to the distance to the transmission line in view of the anticipated volume of gas to be realized from any one well. There is testimony that the entire field might now be profitable if all three shut-in wells were put into production, but that evaluation was very questionable. It does appear from the record that a field of gas has been located beneath the leased premises, and that further drilling so as to develop a quantity of gas which would justify the expense of marketing is feasible.

We hold that up to the dates of the filing of these lawsuits the defendant-lessee had satisfied the implied covenants imposed upon it to act diligently to discover and market gas in paying quantities. Paying quantities have not yet been established, however, the lessee has proceeded diligently

toward that end, and we affirm the chancellor in his dismissal of these lawsuits which attempt to void the two leases at issue.

██ We note that the duties imposed upon the lessee to diligently explore, operate and market the product is a continuing one. The fact that the lessee now has brought in three shut-in gas wells does not relieve it of the obligation to proceed as required under the implied covenant to diligently attempt to bring the field in as a producing field.

We affirm the chancellor in his ruling that the lessee perfect the capping of each well so as to remove an existing danger of fire at the well heads. These causes are remanded to the respective trial courts for such proceedings as may be necessary in that respect.

The chancellor held that the 50-acre lease continued under the five year clause only as to the 40 acres committed to the one well drilled on that tract and that the remainder of the tract was released from the term of the lease. We fail to find proof which established 40 acres as the land committed to that well, but we note that no party objects to that ruling. Therefore, we affirm the chancellor in that ruling, but we remand for the fixing of that 40 acres, or any part thereof which is included within the 50-acre tract under lease, and for an order releasing the balance of the 50 acres not committed to that well.

██ We agree with the chancellor that the plaintiff has failed to establish that he executed the two leases in reliance upon misrepresentations of the defendant's agents. We also hold that the proof fails to establish that the defendant-lessee damaged the leased premises in any amount. These issues were not expressly presented on appeal, but we dispose of them by affirming the chancellor in both aspects in each lawsuit.

The cost in this court is adjudged against the plaintiff-appellant for which execution may issue, if necessary.

PARROTT, P.J., and GODDARD, J., concur.