Norman E. SONDROL; Marlene J. Sondrol, Plaintiffs–Appellants,

v.

PLACID OIL CO., Defendant–Appellee.

No. 93–1733.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 16, 1993.

Decided May 4, 1994.

Rehearing Denied June 1, 1994.

Kent Reierson, Williston, ND, argued, for plaintiffs-appellants.

Craig C. Smith, Bismarck, ND, argued, for defendant-appellee.

Before LOKEN, Circuit Judge, HEANEY, Senior Circuit Judge, and HANSEN, Circuit Judge.

LOKEN, Circuit Judge.

This diversity case arises from the natural gas industry's stunning miscalculation of the effects of federal deregulation of natural gas producers. *See* Natural Gas Policy Act of 1978, 15 U.S.C. §§ 3301–3432. The battlefield is the one we surveyed in *Koch Hydrocarbon Co. v. MDU Resources Group*, 988 F.2d 1529 (8th Cir.1993). The combatants here are natural gas producers wounded by the downstream struggles described in our opinion in *Koch.*

Defendant Placid Oil Company ("Placid") operated the Eide # 35–11 gas well on North Dakota land leased in part from plaintiffs Norman and Marlene Sondrol. In this action, the Sondrols allege that Placid underpaid royalties due under the lease. The district court[1] granted summary judgment for Placid, concluding that it paid the required percentage of the proceeds received from its sales of the gas produced. The Sondrols appeal. We affirm.

## I. Background.

The Eide # 35–11 well produced gas from April 1984 until February 1987. Placid sold the gas at the wellhead to processor Koch Hydrocarbon Company ("Koch") under a Gas Processing Agreement between Placid and Koch. Koch processed the wet gas[2] and sold it to Montana Dakota Utilities Company ("MDU") under the 1979 Gas Purchase Contract between Koch and MDU that was at issue in *Koch. See* 988 F.2d at 1534. Koch paid Placid seventy-five per cent of the proceeds Koch received from MDU, less Koch's

1. The HONORABLE PATRICK A. CONMY, United States District Judge for the District of North Dakota.

2. Processing removes liquids and contaminating sulphur compounds, thereby turning the "sour" natural gas into dry gas suitable for domestic and commercial use. *See West v. Alpar Resources, Inc.*, 298 N.W.2d 484, 487 (N.D.1980).

processing and fuel fees. Placid then paid royalties to the Sondrols. The Gas Processing Agreement governed Koch's payments to Placid; the royalty provision in the oil and gas lease governed Placid's payments to the Sondrols.

Deregulation provided "new incentives for production [that] transformed the gas shortages of the 1970's into gas surpluses during the 1980s." *Mobil Oil Explor. & Producing S.E., Inc. v. United Distrib. Cos.*, 498 U.S. 211, 218, 111 S.Ct. 615, 620–21, 112 L.Ed.2d 636 (1991). As a result, MDU defaulted on its Gas Purchase Contract with Koch. *See generally Koch*, 988 F.2d at 1533. Although MDU physically took the gas processed by Koch, MDU refused to pay for a substantial portion, including 32.5% of the gas produced by the Eide # 35–11 well. This gas remained in storage until 1990, when Koch transferred it to Placid and Placid resold it to a third party for much less than the Koch/ MDU contract price. Placid did not pay the Sondrols a royalty on the stored gas while it was in storage, but paid the royalty based upon its reduced receipts from the 1990 sale.

The Sondrols then commenced this action, alleging Placid improperly failed to pay royalties on the stored gas at the time it was processed by Koch, and that "[v]arious other deductions were improperly made from the proceeds from the gas sales." The district court granted Placid's cross motion for summary judgment, concluding that "the 'proceeds' clause applies [and] defendant has remitted all proceeds received by it to the plaintiffs." On appeal, the Sondrols argue that the district court erred in granting Placid summary judgment on the following issues: (1) whether Placid improperly refused to pay royalties for the gas placed in storage; (2) whether Placid improperly deducted gross production taxes and Koch's processing fees from royalty payments to the Sondrols; and (3) whether Placid breached its duty to the Sondrols to market the gas from the Eide # 35–11 well. We review the district court's grant of summary judgment de novo.

*See Burk v. Nance Petroleum Corp.*, 10 F.3d 539, 542 (8th Cir.1993).

## II. Royalties on Gas Placed in Storage.

The oil and gas lease contains the following royalty provision:

[L]essee covenants and agrees ... Second. To pay lessor ⅛ of the proceeds received for gas sold from each well where gas only is found, or the market value at the well of such gas used off the premises....

The crux of this dispute is whether the "proceeds" clause or the "market value" clause applied to the gas MDU and Koch placed in storage. The Sondrols argue that the market value clause should determine their royalty because the stored dry gas generated no "proceeds," while the wet gas from which it was produced was "used off the premises" by Koch to manufacture the stored gas and other by-products.[3] Placid argues that the "proceeds" clause governs because all the wet gas was sold to Koch at the wellhead; the market value clause was intended to apply only to gas used off the premises by Placid, not to gas processed and stored by Placid's customer, Koch.

■ A royalty term that combines a "proceeds" or "amount realized" clause for gas sold at the wellhead, and a "market value" clause for gas sold or used elsewhere, is a common form of royalty provision in oil and gas leases. *See* 3 Eugene Kuntz, A Treatise on the Law of Oil and Gas § 40.4(a), at 324– 25 (1989). Judge Wisdom cogently explained the function of the two alternative clauses in *Piney Woods Country Life School v. Shell Oil Co.*, 726 F.2d 225, 231 (5th Cir.1984), *cert. denied*, 471 U.S. 1005, 105 S.Ct. 1868, 85 L.Ed.2d 161 (1985):

[T]he purpose is to distinguish between gas sold in the form in which it emerges from the well, and gas to which value is added by transportation away from the well or by processing after the gas is produced. The royalty compensates the lessor for the value of the gas at the well: that is, the value of the gas after the lessee

---

**3.** Although it did not reach the issue of market value, the district court observed: "the court cannot help but ponder the difficulties in trying to establish a market value for a product which is not marketable other than as supply to a processing plant which in turn cannot find a market for the processed dry gas."

... produce[s] gas at the surface, but before the lessee adds to the value of this gas by processing or transporting it. When the gas is sold at the well, the parties to the lease accept a good-faith sale price as the measure of value at the well. But when the gas is sold for a price that reflects value added to the gas after production, the sale price will not necessarily reflect the market value of the gas at the well. Accordingly, the lease bases royalty for this gas not on actual proceeds but on market value.[4]

In this case, it is undisputed that Placid sold all the wet gas produced to Koch at the wellhead. Therefore, we agree with the district court that the "proceeds" clause of the oil and gas lease unambiguously applied to Placid's sales. *Compare Waechter v. Amoco Prod. Co.*, 217 Kan. 489, 537 P.2d 228, 249 (1975) (proceeds clause applied to gas sold at the well), *with First Nat'l Bank of Jackson v. Pursue Energy Corp.*, 799 F.2d 149, 152–53 (5th Cir.1986) (market value clause applied where gas used by lessee off premises), *and Exxon Corp. v. Middleton*, 613 S.W.2d 240, 242–43 (Tex.1981) (market value clause applied where sale was not at the wells).

█ The Sondrols further argue that, even if the "proceeds" clause applies, Placid's proceeds included not only the cash paid by Koch, but also the "credit" Koch gave Placid for the dry gas placed in storage. We disagree. In this type of royalty clause, "proceeds" means "the money obtained from an actual sale." *Matzen v. Cities Serv. Oil Co.*, 667 P.2d 337, 347 (Kan.1983), *cert. dismissed*, 468 U.S. 1222, 105 S.Ct. 17, 82 L.Ed.2d 912 (1984), 472 U.S. 1023, 105 S.Ct. 3492, 87 L.Ed.2d 625 (1985), *and* 473 U.S. 927, 106 S.Ct. 20, 87 L.Ed.2d 698 (1985). *See also Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 562 P.2d 1, 16 *cert. denied*, 434 U.S. 876, 98 S.Ct. 228, 54 L.Ed.2d 156 (1977); *Waechter*, 537 P.2d at 249. The Sondrols concede that Placid paid royalties on all the cash proceeds it received, including the cash received in 1990 when Placid took back and resold the stored gas. In a proper case, "proceeds" might also include other types of tangible, non-monetary consideration, but the Sondrols offered no proof that the "credit" from Koch was anything other than a bookkeeping entry reflecting that Koch had received but not paid for the stored gas. Such a credit is not "proceeds" upon which a royalty must be paid.

### III. Royalty Deduction Issues.

The Sondrols argue that disputed fact issues preclude summary judgment on their claim that Placid made improper deductions from royalties paid under the "proceeds" clause. To a large extent, the allegations of improper deductions are conclusory in nature and therefore will not defeat Placid's motion for summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). However, two allegations merit discussion.

█ First, the Sondrols complain that Placid improperly deducted North Dakota gross production taxes paid on the stored gas. This tax is levied upon all gas when produced, including gas placed in storage. *See* N.D. Cent.Code §§ 57–51–02.2, 57–51–05. The state's Tax Commissioner has approved two methods of valuing raw gas when a portion of the processed residue gas is stored and not sold. *See Amerada Hess*, 410 N.W.2d at 132. Placid chose to determine the wellhead value and pay the tax as if the stored gas had been sold at current prices, that is, the MDU/Koch contract price. The Sondrols do not contend that Placid incorrectly calculated the tax owing under this method. Their complaint—that the stored gas was given a higher value for tax purposes than it ultimately generated for royalty purposes—does not establish a breach of the lease by Placid. Thus, there is no disputed issue of *material* fact.

█ Second, the Sondrols allege that their royalties were improperly reduced by Koch's processing fees. They rely for this contention on *West v. Alpar Resources, supra* note 2. In *West*, the lessors were entitled to a royalty of "one-eighth of the proceeds from the sale of the gas," with no indication of whether "proceeds" meant gross or net pro-

---

4. The Supreme Court of North Dakota cited *Piney Woods* favorably in *Amerada Hess Corp. v. Conrad*, 410 N.W.2d 124, 130 (N.D.1987).

ceeds. *See* 298 N.W.2d at 486. The North Dakota Supreme Court held that the term was ambiguous and therefore the lessee could not deduct its cost of processing from the royalty. By contrast, the royalty clause in this case grants the Sondrols "⅙ of the proceeds received" for gas sold at the wellhead. That language expressly limits the Sondrols' royalty to one-sixth of whatever Koch paid Placid. Moreover, unless the royalties are·reduced by Koch's processing expenses, they would be based upon the value of the *processed* gas, contrary to the royalty's purpose of "compensat[ing] the lessor for the value of the gas at the well," *Piney Woods*, 726 F.2d at 231.

### IV. The Alleged Breach of Duty.

■ Finally, the Sondrols argue that disputed fact issues preclude summary judgment on their claim that Placid breached its duty to market the gas from the Eide # 35–11 well in good faith. As a general proposition, we agree that Placid had a duty to market gas produced under the oil and gas lease in good faith. *See, e.g., Davis v. CIG Exploration, Inc.*, 789 F.2d 328, 332 (5th Cir.1986) (Texas law); *Bristol v. Colorado Oil & Gas Corp.*, 225 F.2d 894, 897 (10th Cir.1955) (Oklahoma law); *Young v. Dixie Oil Co.*, 647 S.W.2d 235, 237 (Tenn.Ct.App. 1982). In North Dakota, the lessee's duty is "to act as a reasonable and prudent operator in developing, operating, and protecting the property, with due regard for the interests of both lessors and lessees." *Irgens v. Mobil Oil Corp.*, 442 N.W.2d 223, 225 (N.D.1989).

■ However, we conclude that the Sondrols' allegations of breach of duty, which were not pleaded in their complaint, are too conclusory to preclude summary judgment. The Sondrols assert that Placid breached its duty to market the gas by not participating in Koch's spot sales of the stored gas, and by failing to insist that Koch "force" MDU to purchase the stored gas. They also suggest that Placid's contract with Koch may not have been "the best arm's length contract" available. Yet the Sondrols point to no evi-

dence supporting these fact-intensive suggestions of bad faith and breach of duty. Where no market exists, a lessee cannot be liable for failure to market the gas. *See Severson v. Barstow*, 103 Mont. 526, 63 P.2d 1022, 1024 (1936); *Swamp Branch Oil & Gas Co. v. Rice*, 253 Ky. 733, 70 S.W.2d 3, 5 (1934).

■ Placid presented unchallenged evidence that it negotiated with four other potential gas purchasers before contracting with Koch on pricing terms that were typical of Koch's contracts with other gas producers. The unsupported assertion that Placid could have compelled Koch to force MDU to purchase more gas during this stressful market borders on the absurd. On this record, the Sondrols' conclusory assertions of an unpleaded breach of duty by Placid may not defeat Placid's motion for summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Taha v. Engstrand*, 987 F.2d 505, 507 (8th Cir.1993); *Mitchell v. Mills County*, 847 F.2d 486, 489–90 (8th Cir.1988).

The judgment of the district court is affirmed.